UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BRITTANI HENRY and | : | |
| BRITTNI ROGERS; | : | |
| GEORGIA NICOLE | : | |
| YORKSMITH and | : | Case No. 1:14-cv-129 |
| PAMELA YORKSMITH; | : | |
| KELLY NOE and | : | Judge |
| KELLY McCRACKEN | : | |
| C/O Gerhardstein & Branch, LPA | : | **COMPLAINT FOR** |
| 432 Walnut Street, Suite 400 | : | **TEMPORARY RESTRAINING** |
| Cincinnati, Ohio 45202 | : | **ORDER AND DECLARATORY** |
| | : | **AND INJUNCTIVE RELIEF** |
| and | : | |
| | : | |
| ADOPTED CHILD DOE | : | |
| JOSEPH J. VITALE and | : | |
| ROBERT TALMAS | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 432 Walnut Street, Suite 400 | : | |
| Cincinnati, Ohio 45202 | : | |
| | : | |
| and | : | |
| | : | |
| ADOPTION S.T.A.R., INC. | : | |
| 433 W. Loveland Ave. | : | |
| 1st Floor | : | |
| Loveland, OH 45140 | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| THEODORE E. WYMYSLO, | : | |
| M.D. | : | |
| 246 N. High Street | : | |
| Columbus, OH 43215 | : | |
| In his official capacity as Director of | : | |
| the Ohio Department of Health | : | |
| | : | |
| and | : | |
| | : | |
| CAMILLE JONES, M.D. | : | |
| In her official capacity as Registrar | : | |
| for the City of Cincinnati Health | : | |

| | |
|---|---|
| Department, | : |
| Office of Vital Records | : |
| 1525 Elm Street, 4th floor | : |
| Cincinnati, OH 45202, | : |
| | : |
| **Defendants.** | : |

# I. PRELIMINARY STATEMENT

1.      This civil rights case is about family and the need of children born in Ohio to have their birth certificates accurately identify their legal parents. Plaintiffs include four couples who are building their families on the basis of same-sex marriages celebrated outside of Ohio. They seek to be treated the same as married opposite-sex couples. Married opposite-sex couples have both of their names on the birth certificates of their children. Defendants do not treat married same-sex couples the same. Defendants will permit only *one* parent from each of these married same-sex plaintiff couples to be listed on the birth certificates of their children. Plaintiffs challenge this unequal treatment as unconstitutional. These same Defendants were recently ordered to recognize valid out-of state marriages between same-sex couples on death certificates. *Obergefell v. Wymyslo*, 1:13-CV-501, 2013 WL 6726688 *1 (S.D. Ohio Dec. 23, 2013). The reasoning from that case compels recognition of same-sex marriages on birth certificates.[1] All of the Plaintiffs seek an order requiring Ohio to recognize their same-sex marriages with respect to their requests for birth certificates. These families established through same-sex marriages must granted the same status and dignity enjoyed by children and parents in families established through opposite-sex marriages.

---

[1] See also, *Kitchen v. Herbert*, 2:13-CV-217, 2013 WL 6697874 (D. Utah Dec. 20, 2013) and *Bishop v. U.S. ex rel. Holder*, 04-CV-848-TCK-TLW, 2014 WL 116013 (N.D. Okla. Jan. 14, 2014) holding state laws banning same-sex marriage unconstitutional based on similar reasoning.

## II. JURISDICTION AND VENUE

2. Jurisdiction over the federal claims is conferred on this Court by 28 U.S.C. §1331 and §1343(3) and (4).

3. Venue is proper under 28 U.S.C. §1391(b)(1).

## III. PARTIES

4. Plaintiffs Brittani Henry and Brittni ("LB") Rogers ("Henry/Rogers Family") are a married same-sex couple who reside in Cincinnati, Ohio. Brittani Henry is pregnant and is due to deliver a baby boy in Cincinnati in June, 2014. They bring this action individually.

5. Plaintiffs Georgia Nicole ("Nicole") and Pamela Yorksmith ("Yorksmith Family) are a married same-sex couple who reside in the Cincinnati area. Nicole is pregnant and is due to deliver a baby boy in Cincinnati in June, 2014. They bring this action individually.

6. Plaintiffs Kelly Noe and Kelly McCracken ("Noe/McCracken Family) are a married same-sex couple who reside in Kenton County, Kentucky. Kelly Noe is pregnant and due to deliver a child in Cincinnati, Ohio in June, 2014. They bring this action individually.

7. Plaintiff Adopted Child Doe is an adopted minor child of Plaintiffs Joseph J. Vitale and Robert Talmas. Doe was born in Ohio and resides with his adoptive parents in New York City, New York. He brings this action individually through his adoptive parents.

8. Plaintiffs Joseph ("Joe") Vitale and Robert ("Rob") Talmas ("Vitale/Talmas Family") are a married same-sex couple who reside in New York City, New York. They bring this action individually and as the legally adoptive parents of Adopted Child Doe.

9. Plaintiff Adoption S.T.A.R., Inc. ("Adoption S.T.A.R.") is a non-profit child placing agency licensed in Ohio. Plaintiff Adoption S.T.A.R. brings this action on behalf of its

clients who seek to complete adoptions from states such as New York where same-sex married couples are both designated as parents but because the child subject to the adoption was born in Ohio, their clients have been forced to record only one of the parent's names on the amended birth certificates issued by Defendants rather than the names of both adoptive parents.

10. Defendant Theodore E. Wymyslo, M.D. is the Director of the Ohio Department of Health. In that capacity he is responsible for overseeing the administration of all statutes and regulations that relate to the State of Ohio's system for recording vital statistics, including but not limited to the issuance of birth certificates. Defendant Wymyslo is sued in his official capacity for injunctive relief only.

11. Defendant Dr. Camille Jones, Local Registrar, Cincinnati Health Department Office of Vital Records, is responsible for filing birth certificates and ensuring that the personal information on the birth certificate is accurate. Defendant Jones is sued in her official capacity.

### IV. FACTS

**A. Henry/Rogers Family**

12. Plaintiffs Brittani Henry and LB Rogers met in 2008. They have been in a loving, committed same-sex relationship since that time.

13. After the decision was rendered in *Obergefell v. Wymyslo*, the couple formalized their commitment through marriage. On January 17, 2014, they were married in the state of New York.

14. Brittani Henry has worked in the health care field and LB Rogers has worked in the package service industry. Having established a home together and enjoying the loving support of their families, the couple decided that they wanted to have children.

15. Brittani Henry became pregnant through artificial insemination ("AI"). The sperm donor is anonymous.

16. Brittani Henry is currently 23 weeks pregnant. She expects to deliver a baby boy in June, 2014.

17. LB Rogers consented to and was a full participant in the decision to build their family using AI. From the beginning they intended to raise this child as their own, together.

18. Under Ohio law, the married opposite-sex husband of a woman who gives birth through AI is legally regarded as the natural father of the child and is listed on the birth certificate of the child born to the woman in the state of Ohio.

19. Brittani Henry and LB Rogers are married now and will continue to be a married couple when their child is born, but Defendants have taken the position that they are prohibited under Ohio law from recognizing the New York marriage on the birth certificate of their baby boy.

20. Without action by this Court, Defendants Jones and Wymyslo will list only one of these plaintiffs as a parent of their son on his birth certificate when he is born in June. Their son will have two parents but will have a birth certificate that only lists one of them as his parent.

**B. <u>Yorksmith Family</u>**

21. Nicole and Pam Yorksmith met and fell in love in 2006. They were married in California on October 14, 2008.

22. The Yorksmith family already includes a three year old son born in 2010 in Cincinnati. He was conceived through AI. The sperm donor is anonymous.

23. Nicole is their son's birth mother but Pam was fully engaged in the AI process, pregnancy and birth. They share and love their ongoing role as parents.

5

24. Only Nicole is listed on their son's birth certificate because Defendants will not list the names of both same-sex married parents on the birth certificates of their children conceived through AI.

25. Failing to have both parents listed on their son's birth certificate has caused the Yorksmith Family great concern. They have created documents attempting to ensure that Pam will be recognized with authority to approve medical care, deal with child care workers and teachers, travel alone with their son and otherwise address all of the issues parents must resolve.

26. Denying recognition of Pam's role as parent to their child is degrading and humiliating for the family. Nicole and Pam are treated differently by Defendants than opposite-sex married parents who seek a birth certificate for their children born under the same circumstances.

27. Now Nicole is pregnant with their second child. She expects to give birth in June in Cincinnati.

28. Under Ohio law, the married opposite-sex husband of a woman who gives birth through AI is legally regarded as the natural father of the child and is listed on the birth certificate of the child born to the woman in the state of Ohio.

29. Nicole and Pam are married now and will continue to be a married couple when their second child is born, but Defendants have taken the position that they are prohibited under Ohio law from recognizing the California marriage on the birth certificate of their baby boy.

30. Without action by this Court, Defendants Jones and Wymyslo will list only one of these plaintiffs as a parent of their son on his birth certificate when he is born in June. Their son will have two parents but will have a birth certificate that only lists one of them as his parent.

### C. The Noe/McCracken Family

31. Plaintiffs Kelly Noe and Kelly McCracken have been in a loving, committed same-sex relationship since 2009.

32. From the beginning of their time together they agreed that they would have children in their family.

33. They were married in the state of Massachusetts in 2011.

34. Kelly Noe became pregnant through AI. The sperm donor is anonymous.

35. Kelly Noe expects to deliver a baby in a Cincinnati, Ohio hospital in June, 2014.

36. Kelly McCracken consented to and was a full participant in the decision to build their family using AI. From the beginning they intended to raise this child as their own, together.

37. Under Ohio law, the married opposite-sex husband of a woman who gives birth through AI is legally regarded as the natural father of the child and is listed on the birth certificate of the child born to the woman in the state of Ohio.

38. Kelly Noe and Kelly McCracken are married now and will continue to be a married couple when their child is born, but Defendants have taken the position that they are prohibited under Ohio law from recognizing the Massachusetts marriage on the birth certificate of their baby.

39. Without action by this Court Defendants Jones and Wymyslo will list only one of these plaintiffs as a parent of their child on his/her birth certificate when the child is born. Their child will have two parents but will have a birth certificate that only lists one of them as a parent of the child.

### D. Vitale/Talmas Family

40. Plaintiffs Joseph J. Vitale and Robert Talmas (Joe and Rob) met in 1997. They live and work as executives in corporations in New York City. They love to travel, enjoy nature, and love to spend time with their extended families.

41. Joe and Rob married in New York on September 20, 2011, and commenced work with Adoption S.T.A.R. to start a family through adoption.

42. Adopted Child Doe was born in Ohio in 2013. Custody was transferred to Plaintiff Adoption S.T.A.R. shortly after birth. Joe and Rob immediately assumed physical custody and welcomed their young boy into their home.

43. On January 17, 2014, an Order of Adoption of Adopted Child Doe was issued by the Surrogate's Court of the State of New York, County of New York, naming both Joe and Rob as parents. Thus, Joe and Rob are full legal parents of Adopted Child Doe.

44. The Plaintiffs are applying to the Ohio Department of Health, Office of Vital Statistics, for an amended birth certificate listing Adopted Child Doe's adoptive name and the names of Joe and Rob as his adoptive parents.

45. Based on the experience of Plaintiff Adoption S.T.A.R.with other clients and their direct communications with the Defendant Wymyslo's staff at the Ohio Department of Health, Plaintiffs Adopted Child Doe and his parents, Joe and Rob will be denied a birth certificate that lists both Joe and Rob as parents.

46. Opposite-sex couples married in New York who secure an order of adoption from a New York court regarding a child born in Ohio routinely have the child's adoptive name placed on his or her birth certificate along with the names of both the man and the woman as the parents of the adoptive child. Plaintiffs Joe and Rob will be denied treatment equal to that of similarly

8

situated opposite-sex couples and Adopted Child Doe will be denied treatment equal to that of similarly-situated children adopted by opposite-sex couples.

47. Without action by this Court, Defendant Wymyslo will allow only one of these plaintiffs to be listed as the parent on the birth certificate of Adopted Child Doe. Joe and Rob refuse to be forced to pick just one of them to be recognized as their son's parent and refuse to allow this vitally important document to misrepresent the status of their family. They do not wish to expose their son to the life-long risks and harms attendant to having only one of his parents on his birth certificate. They seek relief through this action instead.

**E. Adoption S.T.A.R.**

48. As a result of Ohio's practice of not amending birth certificates for the adopted children of married same-sex parents, Adoption S.T.A.R. has been forced to change its placement agreements to inform potential same-sex adoptive parents that they will not be able to receive an accurate amended birth certificate for adopted children born in Ohio. Adoption S.T.A.R. has expended unbudgeted time and money to change its agreements and advise same-sex adoptive parents of Ohio's discriminatory practice, and it has devoted extra time and money to cases like this involving same-sex married couples who adopt children born in Ohio through court actions in other states. The process to seek an accurate birth certificate for Adopted Child Doe – including necessary participation in this lawsuit – is also expected to be a protracted effort that will cause the expenditure of extra time and money.

49. Adoption S.T.A.R. has served same-sex married couples in previous adoption cases and currently is serving other same-sex married couples in various stages of completing the adoption process in other states for children born in Ohio. Adoption S.T.A.R.will serve more same-sex married couples in this capacity in the future. Unless these couples are able to secure

amended birth certificates from Defendant Wymyslo accurately listing both same-sex married persons as the legal parents of their adopted children, they will have clients unable to secure equal rights and full faith and credit for their adoption decrees. This will impose a significant burden on the agency'sability to provide adequate and equitable adoption services to its clients resulting in incomplete adoptions and loss of revenue, frustrating the very purpose of providing adoption services to its clients.

**F. The Marriages of the Henry/Rogers, Yorksmith, Noe/McCracken, and Vitale/Talmas Families are Not Recognized in Ohio**

50. The Henry/Rogers marriage is legally recognized in New York where it was celebrated.

51. The Yorksmith marriage is legally recognized in California where it was celebrated.

52. The Noe/McCracken marriage is legally recognized in Massachusetts where it was celebrated.

53. The Vitale/Talmas marriage is legally recognized in New York where it was celebrated.

54. The marriages of these plaintiffs are also recognized by the federal government by virtue of the decision in *United States v. Windsor*, 133 S.Ct. 2675 (June 26, 2013).

55. The marriages of the plaintiffs are not recognized under current Ohio law.

56. Ohio statutory law prohibits legal recognition of the same-sex marriages of the plaintiff couples. Ohio Rev. Code. § 3101.01(C )(2) states, "Any marriage entered into by persons of the same-sex in any other jurisdiction shall be considered and treated in all respects as having no legal force or effect in this state and shall not be recognized by this state."

57. The Ohio Constitution also prohibits recognition of the same-sex marriages of the couples. OH Const. Art. XV, §11 states, "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage."

58. Unless this Court acts to enjoin these provisions of Ohio law as unconstitutional as applied to these married same-sex plaintiffs they will not be able to secure birth certificates for their children on an equal basis as similarly-situated married opposite-sex parents. Further, without action by this Court, the Vitale/Talmas Family and other families served by Adoption S.T.A.R. will continue to be unlawfully prevented from receiving full faith and credit for their out-of-state adoption decrees as they seek accurate Ohio birth certificates.

**G. Need for Injunction**

59. Defendants Jones and Wymyslo will deny to the Henry/Rogers Family a birth certificate for their baby boy who is due to be born in June 2014 listing both women as the child's parents because Defendants, relying on Ohio law, refuse to recognize the Henry/Rogers same-sex New York marriage.

60. Defendants Jones and Wymyslo will deny to the Yorksmith Family a birth certificate for their baby boy who is due to be born in June 2014 listing both women as the child's parents because Defendants, relying on Ohio law, refuse to recognize the Yorksmith same-sex California marriage.

61. Defendants Jones and Wymyslo will deny to the Noe/McCracken Family a birth certificate for their baby who is due to be born in June 2014 listing both women as the child's

parents because Defendants, relying on Ohio law, refuse to recognize the Noe/McCracken same-sex Massachusetts marriage.

62. Defendant Wymyslo will deny the Vitale/TalmasFamily an amended birth certificate for their son born in Ohio listing both men as the child's parents because Defendants, relying on Ohio law, refuse to recognize the Vitale/Talmas same-sex New York marriage and New York adoption decree.

63. These actions by Defendants deny to Plaintiffs the same status and dignity that Defendants extend to similarly situated families with opposite-sex parents.

64. These actions also deny the full faith and credit due to the adoption decree declaring both Joe Vitale and Rob Talmas to be the parents of Adopted Child Doe.

65. By denying amended birth certificates to Adopted Child Doe and the expected children of all the other plaintiffs listing both of their parents' names, the Defendants hinder the ability of the children to receive accurate identity papers and also hinders the ability of their parents to care for and nurture their children. Birth certificates are documents of high importance that prove parental relationship and custody and are required in many instances for parents to exercise their legal right to make decisions for their children. By denying accurate birth certificates to minor children of same-sex married parents, the Defendants violate the equal protection and substantive due process rights of those parents and those children.

66. Defendants have violated the married plaintiffs' right to remain married. "The right to remain married… is a fundamental liberty interest appropriately protected by the Due Process Clause of the United States Constitution." *Obergefell v. Wymyslo*, 1:13-CV-501, 2013 WL 6726688 *6 (S.D. Ohio Dec. 23, 2013). When one jurisdiction refuses to recognize family relationships legally established in another jurisdiction, "the differentiation demeans the couple,

whose moral and sexual choices the Constitution protects … and whose relationship the State has sought to dignify." *U.S. v. Windsor*, 133 S.Ct. 2675, 2694 (2013). The differential treatment "humiliates tens of thousands of children now being raised by same-sex couples," including the children that will be born to the Henry/Rogers Family, the Yorksmith Family, the Noe/McCracken Family, and Adopted Child Doe. *Id*.

67. The right of plaintiffs to remain married and have their lawful family relationships recognized in other states is a fundamental constitutional right. Its violation constitutes irreparable harm as a matter of law.

68. Defendants have violated Plaintiffs' right to travel. Plaintiffs need accurate amended birth certificates to apply for passports.[2] Federal law requires that passport applications include full names of the applicant's parents.[3] Without a birth certificate for their child that accurately records the names of both adoptive parents and the adoptive names of Adopted Child Doe, the Vitale/Talmas Family is unable to secure a passport for their son. Plaintiffs Joe and Rob routinely engage in international and domestic travel, and they have an international trip planned with their son in May 2014 that is not in their power to reschedule. The constitutional right of all plaintiff families to travel is being violated by Defendants' refusal to issue amended birth certificates that properly list both parents.

69. A birth certificate will be required for Adopted Child Doe and for the children to be born to the Henry/Rogers Family, the Yorksmith Family, and the Noe/McCracken Family to register for public school and to obtain a state identification card or driver's license.

---

[2] U.S. Department of State, Minors under Age 16, http://travel.state.gov/passport/get/minors/minors_834.html (last visited Jan. 3 2014).
[3] U.S. Department of State, New Requirements for U.S. Birth Certificates, http://travel.state.gov/passport/passport_5401.html (last visited Jan. 3, 2014).

70. Birth certificates are widely used as primary evidence of identity. They are weighty documents of extreme importance. When the authenticity or accuracy of a birth certificate is questioned, huge controversies can result.[4] Children are harmed when their parents are not recognized on birth certificates because it is the official document establishing a person's identity and their family.

71. Plaintiffs have a high likelihood of success on the merits. Many of the constitutional issues raised in this case were decided in favor of the same-sex married couples in *Obergefell* and *Windsor*. *Obergefell* is particularly relevant. There, Defendants were required by the United States District Court for the Southern District of Ohio to record death certificates reflecting same-sex marriages – listing the decedents as "married" and their same-sex spouses as their "surviving spouses." Their refusal to do so violated the constitutional guarantees of equal protection and substantive due process. Defendants' constitutional violations in this case are nearly identical to the violations identified and enjoined in *Obergefell*.

72. The decision in *Obergefell* firmly establishes that same-sex married couples are equal to opposite-sex married couples as parents and that children raised in families headed by same-sex married parents are just as well-adjusted and healthy as children raised in families headed by opposite-sex married parents. *Obergefell v. Wymyslo*, 1:13-CV-501, 2013 WL 6726688 *20 (S.D. Ohio Dec. 23, 2013).

73. This Court should take judicial notice of the factual record in the *Obergefell* case, including the expert declarations filed by the parties.

---

[4] The controversy over President Barack Obama's birth certificate, which began prior to his presidency, continues today. *See* Soumya Karlamangla, Los Angeles Times, Crash fuels conspiracists, Dec. 13, 2013, http://articles.latimes.com/2013/dec/13/nation/la-na-hawaii-plane-crash-20131213 (last visited Jan. 3, 2014).

74. The public interest and the balance of equities favor the plaintiffs as there is no legitimate state interest in denying birth certificates to children of same-sex married couples that accurately list both parents. Nor is there any legitimate basis to deny full faith and credit to adoption decrees declaring two adults of the same sex to be the parents of their adopted child. The only reason Defendants refuse to issue birth certificates to these couples listing them as parents to their children is that they are engaged in same-sex marriages. Denying equal government services and privileges to persons because they are married to persons of the same sex is not a legitimate governmental interest.

75. On information and belief, prior to Governor Kasich, Attorney General DeWine, and Defendant Wymyslo taking office in January, 2011, the Ohio Department of Health was providing same-sex married couple such as plaintiffs Joe and Rob with birth certificates for their adopted children consistent with that requested in this complaint. There is no legitimate state interest to support this change in policy.

76. There is no adequate remedy at law. The Henry/Rogers Family, the Yorksmith Family, the Noe/McCracken Family, the Vitale/Talmas Family, and the families served by Adoption S.T.A.R. are all suffering irreparable harm. There is no harm to the state or local governments by granting a declaratory judgment and an injunction prohibiting Defendants' enforcement of the challenged statute and Ohio constitutional amendment as applied to the plaintiffs with respect to the issuance of birth certificates. The public interest is clearly served by this Court acting to order recognition of the true nature of the plaintiff families consistent with the manner in which Ohio treats similarly-situated families with opposite-sex parents as applied to the issuance of birth certificates. The public interest is also clearly served by according full

faith and credit to the duly issued judicial decrees of sister states. Only prompt action by this Federal Court ordering declaratory and injunctive relief will serve the public interest.

## V. FIRST CLAIM FOR RELIEF

### 42 U.S.C. §1983 – United States Constitution

77. Defendants, acting under color of law, have violated rights secured to plaintiffs by the First and Fourteenth Amendments to the United States Constitution including the right of association, the right to due process of law, and the right to equal protection under the law. Specifically, Defendants have failed and will fail to issue birth certificates listing the adult plaintiffs as the legal parents of their children based solely on the fact that they are in a same-sex marriage. This action denies rights owed to both the adult and the child plaintiffs.

## VI. SECOND CLAIM FOR RELIEF

### U.S.C. §1983 – Full Faith and Credit

78. Defendants, acting under color of law, have violated rights secured to plaintiffs Adopted Child Doe, Joseph J. Vitale, Robert Talmas, and clients of Adoption S.T.A.R. by the Full Faith and Credit Clause, Article IV, Section 1 of the United States Constitution. Specifically, Defendants have refused to give full faith and credit to a final order of adoption issued by a court of competent jurisdiction in a sister state.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

A. Issue a declaratory judgment that the statutory and Ohio Constitutional provisions at issue in this case violate the constitutional rights of these families with same-sex parents married in jurisdictions that authorize same-sex marriage who would be entitled to have both parents on a child's birth certificate but for the fact that the parents are of the same sex.

Specifically, this court should declare that the Henry/Rogers Family is entitled to a birth certificate for their child at birth that lists both Brittany Henry and Brittni Rogers as the parents of that child. Also, the Yorksmith Family is entitled to a birth certificate for their child at birth that lists both Georgia Nicole Yorksmith and Pamela Yorksmith as parents of that child. Also, the Noe/McCracken Family is entitled to a birth certificate for their child at birth that lists both Kelly Noe and Kelly McCracken as parents of that child. Finally, the Vitale/Talmas Family is entitled to a birth certificate for Adopted Child Doe listing both Joseph Vitale and Robert Talmas as his legal parents

  B. Issue a declaratory judgment that the statutory and Ohio Constitutional provisions at issue in this case violate the constitutional rights of those same-sex couples married in jurisdictions that authorize same-sex marriage who become clients of Plaintiff Adoption S.T.A.R. who secure adoption orders for children born in Ohio and who seek birth certificates that record both persons in the marriage as the legal parents.

  C. Issue a preliminary and permanent injunction against Defendants and all those acting in concert requiring that they issue to the Henry/Rogers Family a birth certificate for their child at birth that lists both Brittany Henry and Brittni Rogers as the parents of that child; and that they issue to the Yorksmith Family a birth certificate for their child at birth that lists both Georgia Nicole Yorksmith and Pamela Yorksmith as parents of that child; and that they issue to the Noe/McCracken Family a birth certificate for their child at birth that lists both Kelly Noe and Kelly McCracken as parents of that child; and that they issue to the Vitale/Talmas Family a birth certificate listing both Joseph Vitale and Robert Talmas as the legal parents of Adoptive Child Doe. Said injunction shall include a requirement that Defendant Wymyslo and Jones issue instructions to local registrars and Department staff who assist with the completing of Ohio birth

certificates explaining their duties under the orders of this Court, and said injunction shall include a requirement that Defendants Wymyslo and Jones issue directives to adoption agencies and hospitals and all those who have the responsibility for assisting with the completing of Ohio birth certificates explaining their duties under the orders of this Court;

    D.    Award to Plaintiffs reasonable costs, expenses, and attorney fees;

    E.    Award such other and further relief as this Court shall deem just and reasonable.

Respectfully submitted,

| | |
|---|---|
| Lisa T. Meeks  #0062074<br>Newman & Meeks Co., LPA<br>215 E. Ninth Street, Suite 650<br>Cincinnati, OH  45202<br>Phone:  513.639.7000<br>Fax:  513.639.7011<br>lisameeks@newman-meeks.com<br><br>Ellen Essig<br>105 East Fourth Street<br>Suite 400<br>Cincinnati, OH 45202<br>Phone: 513.698.9345<br>Fax: 513.345.2588<br>ee@kgnlaw.com<br>[pro hac vice motion pending]<br>*Attorneys for Plaintiffs* | /s/ Alphonse A. Gerhardstein<br>Alphonse A. Gerhardstein # 0032053<br>*Trial Attorney for Plaintiffs*<br><br>Jennifer L. Branch #0038893<br>Jacklyn Gonzales Martin #0090242<br>Gerhardstein & Branch Co. LPA<br>432 Walnut Street, Suite 400<br>Cincinnati, Ohio 45202<br>Phone: 513.621.9100<br>Fax: 513. 345-5543<br>agerhardstein@gbfirm.com<br>jbranch@gbfirm.com<br>jgmartin@gbfirm.com<br>*Attorneys for Plaintiffs* |