**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **BRITTANI HENRY, et al.** | : | |
| | : | |
| Plaintiffs, | : | Case No. 1:14-CV-00129 |
| | : | |
| v. | : | JUDGE TIMOTHY S. BLACK |
| | : | |
| **THEODORE E. WYMYSLO, M.D.,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY AND INJUNCTIVE RELIEF**

---

Respectfully submitted,

MICHAEL DEWINE (0009181)
Ohio Attorney General

*/s/ Ryan L. Richardson*

RYAN L. RICHARDSON (00090382)*
    *Lead and Trial Counsel*
BRIDGET E. COONTZ (0072919)
ZACHERY P. KELLER (0086930)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
ryan.richardson@ohioattorneygeneral.gov
bridget.coontz@ohioattorneygeneral.gov
zachery.keller@ohioattorneygeneral.gov

*Counsel for Theodore E. Wymyslo, M.D.,
Director of the Ohio Department of Health*

## TABLE OF CONTENTS

INTRODUCTION.......................................................................................................................1

The definition of marriage has long been, and continues to be, a matter of state law.  Consistent with the Supreme Court's decision in United States v. Windsor, 133 S. Ct. 2675 (2013), Ohio has decided to preserve the traditional definition of marriage.  The Court should reject Plaintiffs' attempt to undermine Ohio's decision.  At the outset, the Court should decline Plaintiffs' belated invitation to transform this case from the narrow as-applied challenge Plaintiffs pleaded into a sweeping facial attack.  Regardless, even limiting consideration to the as-applied context of birth certificates, Plaintiffs fail to demonstrate that Ohio's marriage laws are unconstitutional.

BACKGROUND .........................................................................................................................3

LAW AND ARGUMENT............................................................................................................5

I.      This Court should reject Plaintiffs' attempt to convert this lawsuit
        into a facial challenge............................................................................................5

        A.      This Court should decline to adjudicate unpleaded allegations
                raised for the first time in briefing. .......................................................6

Plaintiffs' failure to raise their new facial challenge prior to final merits briefing alone justifies denying their sweeping request for relief.  See, e.g., Thomas v. Croft, No. 2:10–cv–74, 2011 WL 1740027, at *3 (S.D. Ohio May 4, 2011) (Report and Recommendation adopted).  To avoid prejudice, and given the expedited schedule, the Court should only consider the as-applied claims.

        B.      Plaintiffs fail to satisfy their burden of justifying facial
                invalidation. ..............................................................................................8

In any case, Plaintiffs fail to satisfy the heavy burden a facial challenge demands.  To succeed on a facial challenge, "a plaintiff must establish that no set of circumstances exists under which [the statute] would be valid."  Speet v. Schuette, 726 F.3d 867, 872 (6th Cir. 2013) (internal quotations omitted).  Plaintiffs do not even try to make such a showing.

II.     Plaintiffs fail to demonstrate any constitutional violation. ...........................10

        A.      This Court's decision in Obergefell does not control Plaintiffs'
                constitutional claims here..........................................................................10

*As this Court emphasized, the decision in Obergefell v. Wymyslo, — F. Supp. —, 2013 WL 7869139 (S.D. Ohio Dec. 23, 2013) "is a limited one" applying only to the plaintiffs in that case and holding simply that "Ohio must recognize valid out-of-state marriages between same-*

i

*sex couples on Ohio death certificates" 2013 WL 7869139, at \*1 (emphasis added). This case arises in the distinct setting of birth certificates. Obergefell does not control here.*

**B.** **Binding Supreme Court precedent and federal law forecloses Plaintiffs' due process and equal protection challenges. ...................................11**

**1.** **The United States Supreme Court has determined that the issue of same-sex marriage does not raise a substantial federal question. ...................................................11**

In *Baker v. Nelson*, 409 U.S. 810 (1972) the Supreme Court summarily dismissed equal protection and due process challenges to Minnesota's ban on same-sex marriage "for want of a substantial federal question." *Baker* remains binding precedent and precludes Plaintiffs' due process and equal protection claims.

**2.** **The Supreme Court's decision in *Windsor* re-affirmed each State's sovereign right to define marriage in this fundamental regard and did not undermine *Baker*. .............................12**

The Supreme Court's decision in Windsor reaffirms the principle underlying Baker; that the definition of marriage is a matter of state law. See 133 S. Ct. at 2689-93.

**3.** **Federal law codifies the States' authority to refuse to recognize out-of-state marriages. ...........................................13**

Section 2 of DOMA, 28 U.S.C. § 1738C, not challenged here, codifies the right of each state to define marriage for itself.

**III.** **Ohio's marriage laws do not infringe on fundamental due process rights..................................................................................................14**

**A.** **There is no fundamental right to same-sex marriage recognition. ..............................................................................14**

Fundamental rights "must be 'objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" U.S. Citizens Ass'n v. Sebelius, 705 F.3d 588, 601 (6th Cir. 2013) (quoting Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997)). Given the lack of supporting Supreme Court or Sixth Circuit authority, this Court (in Obergefell) correctly declined to recognize a due process fundamental right to same-sex marriage. Nor should the Court apply a new liberty interest obligating Ohio to recognize same-sex marriages performed in other states. Such a right is not deeply rooted in this nation's history and conflicts with traditional deference to each state's marriage decisions.

**B.** **Ohio's marriage laws do not directly and substantially interfere with other fundamental rights.** ...........................................19

Under substantive due process law not "every state regulation which relates in any way to the incidents of or prerequisites for [a fundamental right] must be subjected to rigorous scrutiny." *Zablocki v. Redhail,* 434 U.S. 374, 386 (1978). Only "direct and substantial interference" requires heightened scrutiny, "while lesser interferences merely merit[] rational-basis review." *Akers v. McGinnis,* 352 F.3d 1030, 1040 (6th Cir. 2003) (internal quotations omitted).

1. Plaintiffs do not establish a fundamental right to a birth certificate with two names. .......................................................20

Plaintiffs have not established that Ohio's marriage laws substantially or directly interfere with any fundamental parenting right. Ohio provides birth certificates to all children born in Ohio. Plaintiffs fail to demonstrate why a birth certificate listing a single name rather than two deprives them of any concrete benefit. Moreover, administrative or evidentiary inconveniences are not enough to establish direct and substantial interference. *See League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 535 (6th Cir. 2007).

2. **Ohio's marriage laws do not directly and substantially interfere with the right to travel.** ...........................................21

Plaintiffs' contentions that they are unable to travel due to Ohio laws are both factually and legally inaccurate. Federal regulations governing applications for passports reflect that either a single or two-parent birth certificate is sufficient. *See* 22 C.F.R. § 51.42(a) (providing that a birth certificate must show "the full name of the parent(s)") (emphasis added). An applicant may also submit alternative secondary evidence. 22 C.F.R. § 51.42(b).

**IV.** **Ohio's marriage laws do not violate equal protection.** ...................................................23

    **A.** **Rational basis review applies to Plaintiffs' equal protection claims.** ...................................................23

        **1.** **Under binding Sixth Circuit precedent, sexual orientation is not a suspect classification.** ...................................24

Binding Sixth Circuit precedent dictates that classifications based on sexual orientation are subject to rational basis scrutiny. *See, e.g., Davis v. Prison Health Serv.,* 679 F.3d 433, 438 (6th Cir. 2012).

iii

      **2.**      **Plaintiffs' unsupported allegation that Ohio's marriage laws discriminate against children does not trigger heightened scrutiny...................................................................27**

Plaintiffs' unsupported allegations that Ohio marriage laws discriminate against children are insufficient to invoke heightened scrutiny. See Taulbee v. Carver, No. 1:10–cv–422, 2011 WL 6009675, at *6 (S.D. Ohio Sept. 8, 2011) ("Plaintiffs' lack of specificity is fatal to their equal protection claims.") (Report and Recommendation adopted in full).

**B.**      **Applying rational basis review, the Court must exercise judicial restraint in considering Ohio's marriage laws and may not guess at some collective motivation of Ohio voters. ...................27**

      **1.**      **The Court cannot speculate as to the differing motivations of Ohio voters or legislators in supporting Ohio's same-sex marriage laws.................................................27**

Where, as here, the law in question is a direct result of an electoral vote, a reviewing court cannot even inquire into the actual motivations of the electorate in adopting a measure via initiative or referendum. Equality Foundation of Greater Cincinnati, Inc. v. City of Cincinnati,128 F.3d 289, 294 n.4. (6th Cir. 1997).

      **2.**      **Rational basis review accords Ohio's marriage laws significant deference. ...............................................................29**

Rational basis review is "a paradigm of judicial restraint." *FCC v. Beach Comm's, Inc.*, 508 U.S. 307, 315 (1993). A court may not "judge the wisdom, fairness, or logic of legislative choices." *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 505-06 (6th Cir. 2007).

      **3.**      **Under rational basis review, Plaintiffs bear the burden of negating every conceivable basis that might support Ohio's marriage laws.............................................................30**

Under rational basis review, a law "will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Spurlock v. Fox, 716 F.3d 383, 402 (6th Cir. 2013). Plaintiffs bear the burden "to negative every conceivable basis which might support it." Heller v. Doe, 509 U.S. 312, 320 (1993).

**C.**      **Plaintiffs have failed in their legal burden of negating "every conceivable basis" for Ohio's preservation of traditional marriage, and Ohio's marriage laws therefore satisfy rational basis review...........................................................................32**

There are a number of conceivable legitimate reasons why lawmakers and voters passed Ohio's marriage laws. For example, in, Lawrence, Justice O'Connor recognized that "preserving the traditional institution of marriage" was itself a "legitimate state interest." Lawrence v. Texas,

539 U.S. 558, 585 (2003) (O'Connor, J., concurring). Moreover, as the district of Hawaii found in Jackson, "the state may rationally decide to observe the effect of allowing same-sex marriage in other states before changing its definition of marriage." Jackson v. Abercrombie, 884 F. Supp. 2d 1065, 1118 (D. Hawai'i 2012). Finally, Plaintiffs' contention that a state cannot adopt the traditional definition of marriage for purposes of its own law lacks support.

**V.    Ohio's marriage laws, and Ohio's birth certificate practices, do not violate the Full Faith and Credit Clause.** ........................................................................37

The New York Plaintiffs' full faith and credit claim fails for multiple reasons. First, under Section 2 of DOMA, passed pursuant to Congress' Full Faith and Credit Clause authority, Ohio retains the ability to define and recognize marriage as it deems appropriate. Second, the Full Faith and Credit Clause does not give rise to a § 1983 cause of action. Adar v. Smith, 639 F.3d 146, 152-57 (5th Cir. 2011) (en banc); see also Thompson v. Thompson, 484 U.S. 174, 182-83 (1988) (recognizing that the Full Faith and Credit Clause "only prescribes a rule by which courts, Federal and state, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records, and judicial proceedings of a State other than that in which the court is sitting.") (emphasis added, internal quotation omitted). Finally, Ohio is not failing to give effect to Plaintiffs' New York Adoption Decree. Ohio is willing to reissue a birth certificate in light of the Adoption Decree under Ohio law. The Full Faith and Credit Clause does not force Ohio to recognize Mr. Vitale and Mr. Talmas' same-sex marriage in doing so.

**VI.    Plaintiff Adoption S.T.A.R. lacks standing to pursue its claims in this case.** ...........................................................................................................................41

To establish Article III standing, a plaintiff must show that an injury is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Clapper v. Amnesty Intern. USA, 133 S. Ct. 1138, 1147 (2013) (internal quotations omitted). Moreover, to invoke third-party standing, a plaintiff must also establish that (1) "the party asserting the right has a 'close' relationship with the person who possesses the right" and (2) "there is a 'hindrance' to the possessor's ability to protect his own interests." Boland v. Holder, 682 F.3d 531, 537 (6th Cir. 2012) (internal quotations omitted). Here, Adoption S.T.A.R. fails to prove any injury resulting from the challenged Ohio laws and further fails to demonstrate that potential third parties are hindered from pursuing their own rights.

**CONCLUSION** ...........................................................................................................................45

**CERTIFICATE OF SERVICE** ................................................................................................46

# TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE(S)**

*Adar v. Smith*,
    639 F.3d 146 (5th Cir. 2011) (en banc) ...................................................38, 39, 40

*Akers v. McGinnis*,
    352 F.3d 1030 (6th Cir. 2003) ...................................................................20

*Am. Exp. Travel Related Serv. Co. v. Kentucky*,
    641 F.3d 685 (6th Cir. 2011) ...............................................................28, 31

*Andersen v. King Cnty.*,
    158 Wash. 2d 1 (Wash. 2006)...................................................................36

*Arthur v. City of Toledo*,
    782 F.2d 565 (6th Cir. 1986) ...................................................................28

*Attorney General of New York v. Soto–Lopez*,
    476 U.S. 898 (1986).............................................................................22, 23

*Ayotte v. Planned Parenthood of N. New Eng.*,
    546 U.S. 320, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006).............................9

*Bailey v. Callaghan*,
    715 F.3d 956 (6th Cir. 2013) ...................................................................29

*Baker by Thomas v. Gen. Motors Corp.*,
    522 U.S. 222 (1998)..................................................................................40

*Baker v. Nelson*,
    409 U.S. 810 (1972)..................................................................2, 11, 12, 14

*Barrows v. Jackson*,
    346 U.S. 249 (1953)..................................................................................45

*Bassett v. Snyder*,
    951 F. Supp. 2d 939 (E.D. Mich. 2013)..............................................25, 26

*Boland v. Holder*,
    682 F.3d 531 (6th Cir. 2012) ...........................................................42, 44, 45

*Christensen v. County of Boone, IL*,
    483 F.3d 454 (7th Cir. 2007) ...................................................................19

*Citizens for Equal Protection v. Bruning*,
    455 F.3d 859 (8th Cir. 2006) ...............................................................8, 36

| CASES | PAGE(S) |
|---|---|

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010)..................................................................................9

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985)................................................................................30

*Clapper v. Amnesty Intern. USA*,
  133 S. Ct. 1138 (2013)...........................................................................42

*Connection Distrib. Co. v. Holder*,
  557 F.3d 321 (6th Cir. 2009) (en banc) ...................................................8

*Davis v. Prison Health Serv.*,
  679 F.3d 433 (6th Cir. 2012) ..................................................24, 25, 26

*Discount Tobacco City & Lottery, Inc. v. U.S.*,
  674 F.3d 509 (6th Cir. 2012) ...................................................................9

*Doe v. Michigan Dept. of State Police*,
  490 F.3d 491 (6th Cir. 2007) .................................................................29

*Equality Foundation of Greater Cincinnati v. City of Cincinnati*,
  128 F.3d 289 (6th Cir. 1997) ..........................................................24, 28

*ESJ Properties, LLC v. City of Toledo*,
  698 F.3d 845 (6th Cir. 2012) ..........................................................14, 15

*F.C.C. v. Beach Comm'n, Inc.*,
  508 U.S. 307 (1993)....................................................28, 29, 30, 31

*Finstuen v. Crutcher*,
  496 F.3d 1139 (10th Cir. 2007) .............................................................39

*Grinter v. Knight*,
  532 F.3d 567 (6th Cir. 2008) .................................................................15

*Heller v. Doe*,
  509 U.S. 312 (1993)....................................................29, 30, 31, 32

*Hernandez v. Robles*,
  7 N.Y.3d 338 (N.Y. 2006) .....................................................................36

*Hicks v. Miranda*,
  422 U.S. 332 (1975)................................................................................12

*In re Bonfield*,
  97 Ohio St.3d 387 (Ohio 2002)..............................................................21

CASES                                                                                           PAGE(S)

*In re Kandu*,
315 B.R. 123 (Bankr. W.D. Wash. 2004) ...............................................................36

*In re Marriage of J.B. & H.B.*,
326 S.W.3d 654 (Tex. App. 2010)..........................................................................36

*Interstate Natural Gas Ass'n of Am. v. F.E.R.C.*,
285 F.3d 18 (D.C. Cir. 2002) ................................................................................43

*Jackson v. Abercrombie*,
884 F. Supp. 2d 1065 (D. Haw. 2012) .................................................12, 33, 34, 36

*James v. Valtierra*,
402 U.S. 137 (1971).............................................................................................28

*Kowalski v. Tesmer*,
543 U.S. 125 (2004).......................................................................................42, 45

*Lawrence v. Texas*,
539 U.S. 558 (2003)..................................................................................... passim

*League of United Latin American Citizens v. Bredesen*,
500 F.3d 523 (6th Cir. 2007) ...........................................................................21, 22

*Ledesma v. Block*,
825 F.2d 1046 (6th Cir. 1987) ..............................................................................20

*Lee v. Pauldine*,
No. 1:12–cv–077, 2013 WL 65111 (S.D. Ohio Jan. 4, 2013) (Report and
Recommendation adopted in full on February 21, 2013) .......................................24

*Loesel v. City of Frankenmuth*,
692 F.3d 452 (6th Cir. 2012) ................................................................................31

*Los Altos El Granada Investors v. City of Capitola*,
583 F.3d 674 (9th Cir. 2009) ................................................................................37

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).............................................................................................42

*Lyng v. Castillo*,
477 U.S. 635 (1986).............................................................................................20

*Lyng v. International Union, United Auto., Aerospace and Agr. Implement Workers of
America, UAW*,
485 U.S. 360 (1988).............................................................................................20

CASES                                                                                                    PAGE(S)

*Massachusetts v. United States Dep't of Health & Human Servs.,*
    682 F.3d 1 (5th Cir. 2012) .................................................................................12

*Mazzolini v. Mazzolini,*
    168 Ohio St. 357 (Ohio 1958).........................................................................18

*Miller v. Albright,*
    523 U.S. 420 (1998) (O'Connor, J., concurring, Kennedy, J., joining)..................44

*Minnesota v. Northern Securities Co.,*
    194 U.S. 48 (1904)................................................................................39, 40

*Morrison v. Sadler,*
    821 N.E.2d 15 (Ind. App. 2005) .......................................................................36

*Nevada v. Hall,*
    440 U.S. 410 (1979)........................................................................................38

*New State Ice Co. v. Liebmann,*
    285 U.S. 262 (1932) (Brandeis, J., dissenting) ..................................................33

*Northern Shipping Funds I, L.L.C. v. Icon Capital Corp.,*
    — F. Supp. 2d —, 2014 WL 700198 (S.D.N.Y. Feb. 24, 2014) ..............6, 7, 15, 37

*Obergefell v. Wymyslo,*
    — F. Supp. —, 2013 WL 7869139 (S.D. Ohio Dec. 23, 2013)................... passim

*Regan v. Time, Inc.,*
    468 U.S. 641 (1984)..........................................................................................9

*Richards v. Connecticut Dept. of Corrections*
    349 F. Supp. 2d 278 (D.Conn. 2004)..................................................................7

*Robert v. U.S. Jaycees,*
    468 U.S. 609 (1984).......................................................................................18

*Ross v. City of Gatlinburg, Tennessee,*
    113 F. App'x 113 (6th Cir. 2004) ................................................................43, 44

*Sabri v. United States,*
    541 U.S. 600 (2004).........................................................................................9

*Sadie v. City of Cleveland,*
    718 F.3d 596 (6th Cir. 2013) ...........................................................................23

*Salmi v. Sec'y of Health & Human Servs.,*
    774 F.2d 685 (6th Cir. 1985) ...........................................................................24

ix

*Scarbrough v. Morgan Cnty. Bd. of Educ.*,
470 F.3d 250 (6th Cir. 2006) ................................................................24, 26

*Seger v. Kentucky High School Athletic Ass'n*,
453 F. App'x 630 (6th Cir. 2011) ...............................................................30

*Sevcik v. Sandoval*,
911 F. Supp. 2d 996 (D. Nev. 2012) ......................................................32, 36

*Singleton v. Wulff*,
428 U.S. 106 (1976).....................................................................................42

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*,
641 F.3d 197 (6th Cir. 2011) .......................................................................44

*Speet v. Schuette*,
726 F.3d 867 (6th Cir. 2013) ....................................................................8, 9

*Spurlock v. Fox*,
716 F.3d 383 (6th Cir. 2013) .......................................................................30

*Standhardt v. Superior Court ex rel. Cnty. of Maricopa*,
206 Ariz. 276 (Ariz. App. 2003)..................................................................36

*Stewart v. Lastaiti*,
409 F. App'x 235 (11th Cir. Oct. 28, 2010) ................................................40

*Sun Oil Co. v. Wortman*,
486 U.S. 717 (1988).....................................................................................41

*Taulbee v. Carver*,
No. 1:10–cv–422, 2011 WL 6009675 (S.D. Ohio Sept. 8, 2011)...............27

*Thomas v. Croft*,
No. 2:10–cv–74, 2011 WL 1740027 (S.D. Ohio May 4, 2011) ..................6

*Thompson v. Thompson*,
484 U.S. 174 (1988)...............................................................................39, 40

*Town of Southold v. Town of East Hampton*,
477 F.3d 38 (2nd Cir. 2007).........................................................................23

*TriHealth, Inc. v. Board of Comm'rs, Hamilton Cnty., Ohio*,
430 F.3d 783 (6th Cir. 2005) .......................................................................31

*U.S. Citizens Ass'n v. Sebelius*,
705 F.3d 588 (6th Cir. 2013) .......................................................................14

x

*United States v. Windsor,*
    133 S. Ct. 2675 (2013) ............................................................................ passim

*Valle del Sol Inc. v. Whiting,*
    732 F.3d 1006 (9th Cir. 2013) .......................................................................43

*Vance v. Bradley,*
    440 U.S. 93 (1979)..........................................................................................29

*Vetromile v. JPI Partners, LLC,*
    706 F. Supp. 2d 442 (S.D.N.Y. 2010)........................................................6, 7

*Warshak v. U.S.,*
    532 F.3d 521 (6th Cir. 2008) ...........................................................................9

*Washington v. Glucksberg,*
    521 U.S. 702 (1997)................................................................................14, 15

*Washington v. Seattle School District No. 1,*
    458 U.S. 457 (1982)........................................................................................28

*Williams v. North Carolina,*
    317 U.S. 287 (1942)..........................................................................................8

*Wilson v. Ake,*
    354 F. Supp. 2d 1298 (M.D. Fla. 2005)..........................................12, 19, 36, 38

*Windsor v. United States,*
    699 F.3d 169 (2nd Cir. 2012)........................................................................25

*Zablocki v. Redhail,*
    434 U.S. 374 (1978)........................................................................................19

**STATUTES**                                                             **PAGE(S)**

28 U.S.C. § 1738C ...............................................................................10, 13, 34, 37

Ohio Rev. Code § 2151.23(A)(2) ...............................................................................21

Ohio Rev. Code § 3101.01(C) ...............................................................................3, 18

Ohio Rev. Code § 3101.01(C)(3)................................................................................3

Ohio Rev. Code § 3107.03...............................................................................38, 41

Ohio Rev. Code § 3313.672(A)(1) ...............................................................................21

Ohio Rev. Code § 3705.12...............................................................................41

Ohio Rev. Code § 3705.12(A) ...................................................................................................43

Parental Kidnaping Prevention Act of 1980 ...........................................................................39


**OTHER AUTHORITIES**                                                                                    **PAGE(S)**

22 C.F.R. § 51.42(a) ................................................................................................................22

22 C.F.R. § 51.42(b) ................................................................................................................22

110 Mich. L. Rev. 1421, 1424 (June 2012) ............................................................................16

Federal Practice and Procedure § 3563 (3d ed. 2008) ...........................................................40

Ohio Const. Art. XV § 11 ...............................................................................................1, 3, 18

Ohio Constitution ......................................................................................................................3

United States Constitution ..............................................................................................10, 36

U.S. Const., Fourteenth Amendment ...................................................................................4, 36

U.S. Const., Sixth Amendment ...............................................................................................44

U.S. Const. Art. IV § 1 .....................................................................................................37, 40

## INTRODUCTION

The definition of marriage has long been, and continues to be, a matter of state law.  As the Supreme Court recognized in *United States v. Windsor*, 133 S. Ct. 2675, 2689-90 (2013), "[b]y history and tradition the definition and regulation of marriage . . . has been treated as being within the authority and realm of the separate States."  Because "civil marriage is central" to each state's "broader authority to regulate domestic relations[,]" "the federal courts, as a general rule, do not adjudicate issues of marital status even when there might otherwise be a basis for federal jurisdiction." *Id.* at 2691.  *Windsor*, therefore, left the definition of marriage to individual states, allowing each community to consider both evolving understandings of marriage *and "the historical roots of the institution of marriage . . . ." Id.* at 2692-93 (emphasis added).

Consistent with *Windsor*, as well as Section 2 of DOMA (which remains unchallenged federal law), Ohio has made its own decision regarding marriage, deciding to preserve the traditional definition.  In 2004, three million Ohio voters exercised this authority and amended Ohio's Constitution to adopt Article XV § 11, which defines "marriage" in Ohio as uniquely between a man and a woman.  Ohio's traditional definition remains consistent with the laws of most states today.  This Court should reject Plaintiffs' attempt to circumvent the democratic process and undermine the decision of the Ohio people.

At the outset, the Court should decline Plaintiffs' belated invitation to transform this case into a sweeping facial attack on Ohio's marriage laws.  Plaintiffs brought this case as a narrow as-applied challenge in the limited context of birth certificates.  Now, in their final merits briefing Plaintiffs for the first time ask this Court to take the extraordinary step of striking down, *in all applications*, Ohio's laws preventing recognition of out-of-state same-sex marriages.  And they request this expansive relief on a limited record presented on a schedule consistent with Plaintiffs' focused pleading.  Plaintiffs fail to satisfy their heavy burden of demonstrating that the

1

challenged laws are unconstitutional in every application.  This Court should confine its consideration in this case to the specific context of birth certificates.

Even in that limited context, Plaintiffs fail to demonstrate that Ohio's marriage laws are unconstitutional.  Seeking to benefit from the recent ruling in *Obergefell,* Plaintiffs rely almost exclusively on the record and arguments presented in that case.  This Court in *Obergefell*, however, was limited to the narrow context of death certificates and did not consider Ohio law in the context of birth certificates.  Through its narrow approach in *Obergefell*, the Court carefully preserved its ability to reconsider the legal issues at stake in the context of a new case, like this one, that involves new plaintiffs and facts and that impacts fundamentally distinct (unchallenged) statutory schemes.  *Obergefell* therefore does not control the issues raised in this case, and this Court should deny Plaintiffs' request.

Nor should this Court expand *Obergefell*.  The United States Supreme Court's decision in *Baker v. Nelson*, 409 U.S. 810 (1972), reinforced by the Court's recent decision in *Windsor* and Section 2 of DOMA, forecloses Plaintiffs' constitutional challenges here.  And, in any case, Plaintiffs fail to demonstrate that Ohio's adherence to its own popularly enacted marriage laws – rather than the policies and laws adopted elsewhere – raises an issue of constitutional import, whether viewed through the rubric of due process, equal protection, or full faith and credit.

In short, the relief Plaintiffs request (whether narrow or broad) would contravene controlling Supreme Court and Sixth Circuit precedent, disregard the will of Ohio voters, and undercut the democratic process.  Accordingly, the Court should deny Plaintiffs' request for a permanent injunction in its entirety.

## BACKGROUND

This litigation challenges in the context of birth certificates portions of Ohio's Defense of

Marriage Act, Ohio Rev. Code § 3101.01(C), ("the Act"), which provides in part:

> (C)(1) Any marriage between persons of the same sex is against the strong public policy of this state. Any marriage between persons of the same sex shall have no legal force or effect in this state and, if attempted to be entered into in this state, is void ab initio and shall not be recognized by this state.
>
> (2) Any marriage entered into by persons of the same sex in any other jurisdiction shall be considered and treated in all respects as having no legal force or effect in this state and shall not be recognized by this state.
>
> (3) The recognition or extension by the state of the specific statutory benefits of a legal marriage to nonmarital relationships between persons of the same sex or different sexes is against the strong public policy of this state. Any public act, record, or judicial proceeding of this state . . . that extends the specific statutory benefits of legal marriage to nonmarital relationships between persons of the same sex or different sexes is void ab initio. . . .

Ohio Rev. Code § 3101.01(C). The Act disavows any intent to prohibit extension of non-marital

benefits to same-sex relationships or to affect private agreements. Ohio Rev. Code

§ 3101.01(C)(3).

Following passage of the Act, Ohio's citizens opted to amend the Ohio Constitution to

clarify that:

> Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage.

Ohio Const. Art. XV § 11. Article XV § 11 of the Ohio Constitution passed with over three

million votes, by a margin of sixty-one percent in favor of the amendment and thirty-eight

percent against. "State Issue 1: November 2, 2004," Ohio Secretary of State, available at

http://www.sos.state.oh.us/sos/elections/Research/electResultsMain/2004ElectionsResults/04-

1102Issue1.aspx (last visited March 18, 2014).

3

In July 2013, a separate set of plaintiffs (represented by counsel for Plaintiffs here) brought an as-applied challenge to Ohio's marriage laws before this Court, relating to the issuance of death certificates. *See generally*, *Obergefell v. Wymyslo*, — F. Supp. —, 2013 WL 7869139 (S.D. Ohio Dec. 23, 2013).[1] On December 23, 2013, the Court issued a "limited" ruling that Ohio's marriage laws violated the Fourteenth Amendment "*as applied to the plaintiffs*" in that case to the extent they prevented recognition of same sex marriages from other states on Ohio death certificates. *Id.* at *1, *23 (emphases added). The matter is currently before the United States Court of Appeals for the Sixth Circuit.

On February 10, 2014, Plaintiffs pleaded the instant action as an as-applied challenge to Ohio's marriage laws seeking recognition of out-of-state same-sex marriages on Ohio birth certificates. (*See* Compl. ¶¶ 1, 58, VII.A-C (Prayer for Relief).) Considering the narrow scope of the pleadings, as well as the similarly narrow procedural scope of *Obergefell*, Defendant agreed to an expedited case schedule. (*See* Doc. No. 6.) Under this schedule, the Court set Defendant's merit brief for March 19, 2014, approximately five weeks from the beginning of the case. Oral argument was scheduled for April 4, 2014, less than two months after Plaintiffs filed their Complaint.

Plaintiffs filed their motion for permanent injunction on February 28, 2014. A day prior to this filing, Plaintiffs' counsel informed defense counsel that they planned to request facial relief applying to out-of-state marriage recognition in all contexts. Despite the language of the Complaint, and the expedited case schedule, Plaintiffs now seek facial relief that applies to

---

[1] The parties agree the Court should take judicial notice of the *Obergefell* record in it is entirety, including all pleadings and briefs submitted in connection with that litigation. Additionally, Defendant specifically incorporates by reference all arguments set forth in Defendant's Memorandum in Opposition to Plaintiffs' Motion for Permanent Injunction in *Obergefell.*

marriage recognition in all contexts.  (*See* Doc. No. 18-2.)  And although Plaintiffs now request broad relief, the specific arguments within their Complaint and Motion focus only on the topic of birth certificates.

## LAW AND ARGUMENT

**I.      This Court should reject Plaintiffs' attempt to convert this lawsuit into a facial challenge.**

As a preliminary matter, this Court should preclude Plaintiffs from mutating this case into a broad facial challenge to Ohio's marriage laws.  From the outset of this litigation, Plaintiffs framed this case as a narrow matter limited to the issue of "recognition of same-sex marriages on birth certificates" for the specific Plaintiffs involved in this lawsuit.  (Compl. ¶ 1.)  In the very first sentence of the Complaint, Plaintiffs allege that "[t]his civil rights case is about family and the need of children born in Ohio to have their birth certificates accurately identify their legal parents."  (*Id.*)  Plaintiffs indicate that they are "seek[ing] an order requiring Ohio to recognize their same-sex marriage with respect to their request for birth certificates."  (*Id.*)  They further maintain that the Court should "enjoin [Ohio's marriage laws] as unconstitutional as applied to these married plaintiffs" so that they will "be able to secure birth certificates for their children . . . ."  (*Id.* at ¶ 58.)  Consistent with this limited focus, Plaintiffs' Complaint unambiguously restricted the relief sought to the issuance of birth certificates listing the names of both same-sex partners for the children born to or adopted by Plaintiffs in this case or clients of Plaintiff Adoption S.T.A.R.  (*See id.* at ¶¶ VII.A-C.)  Nowhere in the Complaint do Plaintiffs even hint at the possibility of bringing a facial challenge to marriage recognition in all contexts.

In their motion for permanent injunction, however, Plaintiffs seek to fundamentally transform and expand this lawsuit into a facial challenge to Ohio's marriage laws.  In stark contrast to the narrow as-applied challenge pleaded in the Complaint, Plaintiffs' requests in their

briefing "go beyond the as-applied challenge pursued in *Obergefell* and now seek a declaration that the marriage recognition bans are facially unconstitutional, invalid, and unenforceable." (Pls.' Mem. Supp. 11, Doc. No. 18-1.) Without amending or supplementing their original Complaint, Plaintiffs ask this Court to take the extraordinary step of striking down Ohio's marriage laws governing recognition "in their entirety." (*Id.*).[2]

This Court should reject Plaintiffs' belated attempt to transform this matter into a facial challenge to the marriage laws at issue.

### A. This Court should decline to adjudicate unpleaded allegations raised for the first time in briefing.

The mere fact that Plaintiffs waited to add these new claims and requests for relief until their final merits brief is reason alone to dismiss the new facial challenge and restrict this case to the allegations included in the Complaint. *See, e.g., Thomas v. Croft*, No. 2:10–cv–74, 2011 WL 1740027, at *3 (S.D. Ohio May 4, 2011) ("A party may not automatically raise a claim at summary judgment that he did not plead.") (internal quotations omitted) (Report and Recommendation adopted in its entirety by 2011 WL 3107806 (S.D. Ohio July 26, 2011)); *Northern Shipping Funds I, L.L.C. v. Icon Capital Corp.*, — F. Supp. 2d —, 2014 WL 700198, at *21 (S.D.N.Y. Feb. 24, 2014); *Vetromile v. JPI Partners, LLC*, 706 F. Supp. 2d 442, 456 (S.D.N.Y. 2010).

In *Vetromile*, for example, the court refused to allow the plaintiff to "metamorphos[ize] his claim" by adding an unpleaded new challenge at the summary judgment stage. 706 F. Supp. 2d at 456. Although the court acknowledged that it possessed discretion to consider new claims

---

[2] The only limitation Plaintiffs place on the scope of relief they now pursue is that this "case is limited to the issue of marriage recognition and does not include any request that Ohio must permit same-sex couples to marry in Ohio." (Pls.' Mem. Supp. 11.)

where appropriate, it declined to do so given "the utter lack of notice to Defendant and the accompanying prejudice to Defendant." *Id.*; *see also Northern Shipping Funds*, 2014 WL 700198, at *21 (stressing that "[m]otions for summary judgment should be decided on the claims as pleaded, not as alleged in motion papers" and refusing to adjudicate new claims not raised in the Complaint).

The court similarly declined to adjudicate an unpleaded claim raised for the first time in briefing in *Richards v. Connecticut Dept. of Corrections* 349 F. Supp. 2d 278, 291 (D.Conn. 2004). As the *Richards* court aptly explained, the addition of new claims raised in merits briefing inherently prejudices the defendant, who must defend against a new claim without sufficient notice:

> The failure to properly plead the equal protection violation has deprived defendants of the notice necessary to permit them to conduct discovery and prepare a defense. The allegation of an equal protection violation in Richards's opposition brief appears to be the first mention, explicit or implicit, of an equal protection violation and there have been no arguments addressed to that issue in any other papers submitted to the court. . . . No claim for an equal protection violation is present in the pleadings, and the court will not entertain any arguments on that subject.

*Id.*

This Court too should preclude Plaintiffs here from profoundly altering the nature of their case at this final stage of the litigation. To rule otherwise would be inherently prejudicial. Plaintiffs pleaded an as-applied challenge to Ohio's marriage laws in the birth certificate context. In light of the narrow scope of this claim, the parties agreed to and this Court approved an exceedingly expedited schedule that contemplated a single round of briefing on the merits of Plaintiffs' request for permanent injunction. The framework Plaintiffs themselves have implemented precludes thorough exploration and analysis of the broad relief Plaintiffs now seek.

Striking down the marriage recognition statutes in their entirety could implicate many Ohio statutes (not challenged or even identified in the Complaint in this case) encompassing a broad spectrum of issues, including but not limited to matters related to insurance, mortgages, guardianship of children, and real property. It could require a sea change in the way numerous government agencies and departments (not parties to this litigation) fulfill their duties. "The package of government benefits and restrictions that accompany the institution of formal marriage serve a variety of other purposes." *Citizens for Equal Protection v. Bruning,* 455 F.3d 859, 868 (8th Cir. 2006). As the *Windsor* Court recognized, "[t]he definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the '[p]rotection of offspring, property interests, and the enforcement of marital responsibilities.'" 133 S. Ct. at 2691 (quoting *Williams v. North Carolina*, 317 U.S. 287, 298 (1942)). To make a decision of this import without thorough and deliberate consideration threatens to disrupt orderly established processes affecting many issues. To avoid this prejudice, this Court should decline to consider Plaintiffs' new facial challenge to Ohio's marriage laws and instead restrict Plaintiffs to the case they pleaded.

**B.    Plaintiffs fail to satisfy their burden of justifying facial invalidation.**

Putting aside Plaintiffs' failure to plead or otherwise provide notice of a facial challenge to the Ohio's marriage laws, their proposed facial attack is unwarranted and should be rejected. "A facial challenge to a law's constitutionality is an effort 'to invalidate the law in each of its applications, to take the law off the books completely.'" *Speet v. Schuette*, 726 F.3d 867, 871-72 (6th Cir. 2013) (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc)). This "momentous and consequential" relief constitutes an "exceptional remedy." *Id.* (internal quotations omitted).

Courts are therefore wisely reluctant to entertain facial challenges.  As the Sixth Circuit explained:

> [F]acial challenges are disfavored for several reasons.  Claims of facial invalidity often rest on speculation.  As a consequence, they raise the risk of "premature interpretatio[n] of statutes on the basis of factually barebones records."  *Sabri v. United States*, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004) (internal quotation marks omitted). We must also be mindful that, "'[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'"  *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984)).

*Discount Tobacco City & Lottery, Inc. v. U.S.*, 674 F.3d 509, 522 (6th Cir. 2012).  "Judicial restraint" requires a court to adjudicate the constitutionality of a statute on an as-applied basis whenever possible to "avoid unnecessary pronouncement on constitutional issues," and "premature interpretations of statutes in areas where their constitutional application might be cloudy."  *Warshak v. U.S.*, 532 F.3d 521, 529 (6th Cir. 2008) (internal quotations omitted).

Plaintiffs' request to transform an as-applied challenge to a facial attack runs against this fundamental rule of judicial restraint.  This is not a case in which the Court's record is sufficiently developed to warrant facial relief despite Plaintiffs' failure to ask for it.  *See, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 329-31 (2010).  Plaintiffs come nowhere close to establishing "that no set of circumstances exists under which [Ohio's marriage laws] would be valid" as they must to prevail on a facial challenge.  *Speet*, 726 F.3d at 872 (internal quotations omitted).

Indeed, Plaintiffs do not even try to make such a showing.  Although Plaintiffs have expanded their request for relief, they continue to limit all argument and evidence to the narrow context of birth certificates.  Plaintiffs make no effort to define the universe of circumstances in which the challenged marriage laws operate, much less demonstrate that the statutes are

unconstitutional in each of those circumstances. This Court should reject Plaintiffs' facial challenge in its entirety.

## II.    Plaintiffs fail to demonstrate any constitutional violation.

Even an as-applied challenge should fail on the record Plaintiffs present. Contrary to Plaintiffs' contentions, nothing in the Constitution compels the state of Ohio to subordinate the will of Ohio voters to the policies and laws implemented in other states with respect to same-sex marriage. Rather, Ohio's marriage laws represent a "proper exercise of [Ohio's] sovereign authority within our federal system, all in the way that Framers of the Constitution intended." *Windsor*, 133 S. Ct. at 2692. The resulting variation across the states is the natural by-product of a well-established principle of federalism explicitly protected by federal statute, see 28 U.S.C. § 1738C, and recently acknowledged again by the United States Supreme Court in *Windsor*. Ohio's marriage laws comport with the Constitution and should be upheld.

### A.    This Court's decision in *Obergefell* does not control Plaintiffs' constitutional claims here.

In support of their arguments, Plaintiffs rely almost exclusively on this Court's decision and the record developed in *Obergefell*. But contrary to Plaintiffs' contentions, *Obergefell* does not control the outcome in this case. As this Court repeatedly emphasized, the decision in *Obergefell* "is a limited one, and states simply, that under the Constitution of the United States, Ohio must recognize valid out-of-state marriages between same-sex couples *on Ohio death certificates*, just as Ohio recognizes all other out-of-state marriages, if valid in the state performed, and even if not authorized nor validly performed under Ohio law . . . ." 2013 WL 7869139, at *1 (emphasis added) ("Therefore, under the Constitution of the United States, Ohio must recognize on Ohio death certificates valid same-sex marriages from other states.")

(emphasis omitted).  Because *Obergefell* resolved only Plaintiffs' "as-applied" challenge, it "limit[ed] the relief to the particular circumstances of the plaintiff." *Id.* at *4.

Thus *Obergefell,* by its own terms, applies only to the *Obergefell* plaintiffs in the context of recognizing marriage on death certificates.  It does not control and should not be expanded to apply to marriage recognition on birth certificates.  This case raises theories of constitutional infringement not addressed in *Obergefell*, including new due process and equal protection arguments.  Moreover, the issuance of birth certificates implicates different and completely distinct statutory schemes—not challenged here—that collectively create a complex and interconnected system touching on vital statistics, parentage, and adoption.  Accordingly, even those legal arguments that were raised in *Obergefell* should be reviewed *de novo* in this case.

As discussed below, Ohio's marriage laws are constitutional and should be upheld.

**B.  Binding Supreme Court precedent and federal law forecloses Plaintiffs' due process and equal protection challenges.**

**1.  The United States Supreme Court has determined that the issue of same-sex marriage does not raise a substantial federal question.**

As a threshold matter, binding Supreme Court precedent precludes Plaintiffs' due process and equal protection claims.[3]  In *Baker v. Nelson*, 409 U.S. 810 (1972), the United States Supreme Court summarily dismissed "for want of a substantial federal question" an appeal of the Minnesota Supreme Court's decision upholding Minnesota's statutory definition of "marriage" as being a union between a man and a woman.  *Id.*  In reaching this conclusion, the Court

---

[3]  The Court did not expressly address *Baker*'s precedential effect in its decision granting Plaintiffs' motion for permanent injunction.  To the extent that the Court's decision in *Obergefell* reflected an implicit rejection of this argument, Defendant respectfully urges this Court to reconsider its judgment in the context of this case.

necessarily rejected the plaintiffs' contention that Minnesota's ban on same-sex marriage violated the Equal Protection and Due Process Clauses of the Constitution.

"A dismissal for lack of a substantial federal question constitutes an adjudication on the merits that is binding on lower federal courts." *Wilson v. Ake*, 354 F. Supp. 2d 1298, 1304 (M.D. Fla. 2005) (citing *Hicks v. Miranda*, 422 U.S. 332, 344 (1975)). *Baker* thus precludes Plaintiffs' equal protection and due process challenges to Ohio's marriage laws prohibiting recognition of same-sex marriage. *See, e.g.*, *Wilson*, 354 F. Supp. 2d at 1304-05 (concluding that *Baker* disposed of plaintiffs' claims that Florida's refusal to recognize their out-of-state same-sex marriage violated their equal protection and due process rights); *Jackson v. Abercrombie*, 884 F. Supp. 2d 1065, 1084-88 (D. Haw. 2012) (determining that *Baker* "necessarily decided that a state law defining marriage as a union between a man and a woman does not violate the Equal Protection Clause" and thus foreclosed the plaintiffs' challenge to Hawaii's marriage laws limiting marriage to unions between a man and a woman).

Thus, *Baker* is binding precedent unless the Supreme Court overturns it. *Massachusetts v. United States Dep't of Health & Human Servs.*, 682 F.3d 1, 8 (5th Cir. 2012) (citing *Hicks*, 422 U.S. at 344). It has not done so. To the contrary, *Baker* remains in full force today. Indeed, the Court's recent decision in *Windsor* and existing federal law only confirm, rather than negate, *Baker*'s central premise—*i.e.*, that the task of defining marriage falls squarely within the province of the States.

> ### 2. The Supreme Court's decision in *Windsor* re-affirmed each State's sovereign right to define marriage in this fundamental regard and did not undermine *Baker*.

*Windsor* considered the constitutionality of Section 3 of DOMA, which imposed federal definitions of "marriage" and "spouse" that precluded the federal government from recognizing same-sex marriage, even where a State has elected to do so. The Court struck down this

provision because it represented an "unusual deviation from the usual tradition of recognizing and accepting state definitions of marriage. . . ." *Windsor*, 133 S. Ct. at 2693. The Court stressed that, subject to constitutional guarantees, "regulation of domestic relations is an area that has long been regarded as a virtually exclusive province of the States." *Id.* at 2691 (citation omitted). This "allocation of authority" stems from the fact that "recognition of civil marriages is central to state domestic relations law applicable to its residents and citizens." *Id.* Indeed, *Windsor's* very premise, in mandating federal recognition of State marriage law, is that what constitutes marriage is a matter quintessentially appropriate for determination by the States.

*Windsor*, therefore, in no way disturbs *Baker's* conclusion that adopting the traditional definition of marriage presents a matter solely of state law.

### 3. Federal law codifies the States' authority to refuse to recognize out-of-state marriages.

Section 2 of DOMA, which Plaintiffs do not challenge here and this Court did not invalidate in *Obergefell*, further endorses the states' authority to set their own marriage policies, including, whether to recognize out-of-state same-sex marriages. Section 2, which *Windsor* left untouched, 133 S. Ct. at 2682-83, provides:

> *No State*, territory, or possession of the United States, or Indian tribe, *shall be required to give effect to any public act*, record, or judicial proceeding *of any other State*, territory, possession, or tribe *respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State*, territory, possession, or tribe, or a right or claim arising from such relationship.

28 U.S.C. § 1738C (emphases added).

In short, *Baker's* holding that a State's decision regarding whether to recognize same-sex marriage presents no substantial federal question—and thus necessarily no constitutional violations—remains binding authority. This Court should, therefore, dismiss Plaintiffs' claims for lack of a substantial federal question pursuant to *Baker's* adjudication on the merits.

13

**III.     Ohio's marriage laws do not infringe on fundamental due process rights.**

Even if *Baker* and federal law did not dictate the result in this case, Plaintiffs' due process and equal protection arguments fail on the merits.  Seeking to trigger heightened scrutiny through the Substantive Due Process Clause, Plaintiffs advance theories of purported due process violations.  First, they maintain that the *Obergefell* decision establishes a fundamental right to recognition—under Ohio law—of their out-of-state same-sex marriages.  Additionally, Plaintiffs assert that failure to issue two-parent birth certificates infringes on fundamental rights relating to parenting and travel.  Plaintiffs are incorrect on all fronts.  Because Ohio is not infringing on Plaintiffs' fundamental rights, the Court should reject Plaintiffs' assertion and apply rational basis review.

**A.     There is no fundamental right to same-sex marriage recognition.**

Plaintiffs cannot invoke heightened scrutiny by arguing that they have a substantive due process right to Ohio's recognition of their out-of-state same-sex marriages.  By choosing to allow same-sex marriages, individual states do not create a fundamental "right to remain married" that other states must honor.

For purposes of substantive due process, a fundamental right "must be 'objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'"  *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 601 (6th Cir. 2013) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)).

"[T]he list of liberty interests and fundamental rights is short, and the Supreme Court has expressed very little interest in expanding it."  *ESJ Properties, LLC v. City of Toledo*, 698 F.3d 845, 860 (6th Cir. 2012) (internal quotations omitted).  The Supreme Court has specifically

expressed "reluctan[ce] to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Glucksberg*, 521 U.S. at 720 (holding that there is no fundamental right to assisted suicide).  Consequently, "identifying a new fundamental right subject to the protections of substantive due process is often an uphill battle . . . ." *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008) (internal quotations omitted).

The Supreme Court also "require[s] in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721. Furthermore, "*[o]ur Nation's history, legal traditions, and practices* [] provide the crucial guideposts for responsible decision making, . . . that direct and restrain [] exposition of the Due Process Clause." *Id.* (emphasis added) (internal quotations and citations omitted).  The lack of a fundamental right forecloses any substantive due process analysis.  *See ESJ Properties*, 698 F.3d at 862 ("Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (internal quotations omitted).

Given the lack of supporting Supreme Court or Sixth Circuit authority, this Court (in *Obergefell*) correctly declined to recognize a fundamental right to same-sex marriage.  2013 WL 7869139, at *5, *9; *see also Bourke v. Beshear*, — F. Supp. 2d —, 2014 WL 556729, at *5 (W.D. Ky. Feb. 12, 2014) (applying rational basis review because "neither the Supreme Court nor the Sixth Circuit has stated that the fundamental right to marry includes a fundamental right to marry someone of the same sex").  Plaintiffs do not challenge that determination in the current case or resurrect their prior argument.  Nor should this Court revisit this conclusion.  As the Court properly recognized, neither the Supreme Court nor Sixth Circuit has ever held (or even insinuated) that same-sex marriage constitutes a fundamental right.

15

The Supreme Court's silence is telling. Recently in *Windsor*, the Supreme Court faced a due process challenge regarding the federal government's treatment of same-sex marriage. Despite this setting—and although Justice Alito addressed the topic in dissent (133 S. Ct. at 2714-15)—the Court provided no indication that same-sex marriage was included within the fundamental right to marry. Rather, the Court applied rational basis scrutiny, finding that "no legitimate purpose" justified the federal government's interference with state definitions of marriage. *Windsor*, 133 S. Ct. at 2696. In light of recent Supreme Court authority, this Court was correct not to expand—and redefine—the right to traditional marriage.

Defendant respectfully contends, however, that the Court erred in recognizing instead a new fundamental liberty interest "different [] than the fundamental right to marry . . . ." *Obergefell*, 2013 WL 7869139, at *5. The Court described this liberty interest as one's "right not to be deprived" by a forum State of the "already-existing legal marriage" that another State recognizes. *Id.*; *see also* Steve Sanders, "The Constitutional Right to (Keep Your) Same-Sex Marriage," 110 Mich. L. Rev. 1421, 1424 (June 2012) (proposing a new due process liberty interest for "an individual who legally marries in her state of domicile, and then migrates to another state . . . in the ongoing existence of her marriage"). Because the *Obergefell* plaintiffs did not raise such a liberty interest in their motion for relief, neither side addressed this novel theory in the briefing and the concept was only briefly discussed at oral argument. Defendant respectfully requests that the Court revisit its reasoning. At a minimum, the Court should not extend that right to the instant case.

Requiring a state to recognize an out-of-state same-sex marriage finds no support in Sixth Circuit or Supreme Court case law. It thus necessarily follows that any such right is not deeply

(or objectively) rooted in this nation's history or tradition.  Further, the potential right to recognition of an out-of-state marriage is not implicit in the concept of ordered liberty.

To the contrary, requiring Ohio to recognize marriages celebrated in other states even when those marriages conflict with Ohio's own marriage policies squarely conflicts with the longstanding tradition of treating marriage as "a virtually exclusive province of the States" with deference to each State's "policy decisions with respect to domestic relations."  *Windsor*, 133 S. Ct. at 2691.  In fact, it was the federal government's lack of respect for a particular state's "considered perspective on the historical roots of the institution of marriage and its evolving understanding" that set off alarms for the purpose of *Windsor's* substantive analysis.  *Id.* at 2692-93.  The federal government has generally taken a hands-off approach in this area, leaving each state to decide for itself the scope of marriage, and accepting the natural consequence that "[m]arriages laws vary in some respects from State to State."  *Id.* at 2691.  Furthermore, within the specific context of same-sex marriage, Congress—through Section 2 of DOMA—has expressly allowed each state to set its own definition of marriage.

Nor does the historical treatment of out-of-state marriages support a new fundamental right to retain a marriage performed in another jurisdiction whose requirements for marriage are significantly different.  As Prof. Sanders acknowledges, the historical recognition of out-of-state marriages stems from "a *voluntary* [principle] of comity with no external enforcement mechanism" subject to each individual state's specific "public policy exception[s] . . . ."  Sanders, 110 Mich. L. Rev. at 1435-36 (emphasis added); *see also* Grossman Decl. ¶¶ 12-13, *Obergefell* Doc. No. 44-1 ("From its earliest iteration in the United States, marriage law has been primarily the province of the states. . . .  States are generally responsible for crafting their own

provisions about the right to marry, eligibility to marry, and the mode of marriage . . . [and] whether prohibited marriages are void or voidable . . . .").

Ohio law applies this traditional approach to out-of-state marriages, accepting such marriages as long as they are not "unalterably opposed to a well-defined public policy, or prohibited." *Mazzolini v. Mazzolini*, 168 Ohio St. 357, 358 (Ohio 1958).  Based on this country's traditional approach to marriage law, there is no basis for finding a fundamental right requiring one State to accept the marriage laws of another, without consideration of each state's public policy determinations.

Furthermore, due process case law does not provide the necessary foundation for the new liberty interest *Obergefell* applied.  The Supreme Court cases *Obergefell* cited within its due process analysis involved much different factual scenarios and did not establish (or imply) that the Due Process Clause obligates one state to accept the marriage definitions of another.  *See, e.g.*, *Robert v. U.S. Jaycees*, 468 U.S. 609, 612 (1984) (addressing freedom of association rights within the context of gender discrimination by a private organization); *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (emphasizing that the Court's decision did "not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter").

Moreover, contrary to the Court's suggestion in *Obergefell*, Ohio is not taking away existing marriage rights from same-sex couples.  Plaintiffs in this case, for example, remain married under the laws of New York, California, and Massachusetts.  And Ohio's marriage laws do not withdraw any rights Ohio has previously granted.  Neither Article XV § 11 nor Ohio Rev. Code Section 3101.01(C) constituted a policy change in Ohio law.  Thus, the parameters of

Ohio's marriage law were well established before Plaintiffs here entered into their out-of-state marriages.

Finally, the Court must consider the practical consequences of creating a new fundamental right to recognition of out-of-state marriage.  Under this due process theory, each state—by altering its own marriage laws—may effectively "create national [marriage] policy" subjecting any opposing state to heightened scrutiny.  *See Wilson*, 354 F. Supp. 2d at 1303 (rejecting similar approach under the Full Faith and Credit Clause).  Here, other states' policy decisions regarding same-sex marriage would take the decision away from Ohio.  Because liberty interests are limited, require careful description, and are not easily created or expanded, the Court should reject this type of approach.

The new liberty interest outlined within *Obergefell* does not clear the significant hurdles for triggering a fundamental due process analysis.  Accordingly, the Court should not use this theory to apply heightened scrutiny under the Due Process Clause.

>   **B.    Ohio's marriage laws do not directly and substantially interfere with other fundamental rights.**

Plaintiffs' alternative due process arguments are equally unavailing because Plaintiffs fail to demonstrate that the State's actions with respect to birth certificates have "directly and substantially" interfered with any fundamental right.  *See Zablocki v. Redhail*, 434 U.S. 374, 387 (1978).

Under substantive due process law not "every state regulation which relates in any way to the incidents of or prerequisites for [a fundamental right] must be subjected to rigorous scrutiny." *Zablocki*, 434 U.S. at 386; *see also Christensen v. County of Boone, IL*, 483 F.3d 454, 463 (7th Cir. 2007) ("The Constitution prevents fundamental rights from being aimed at; it does not, however, prevent side effects that may occur if the government is aiming at some other

objective.").  Simply put, only "direct and substantial interference" requires heightened scrutiny, "while lesser interferences merely merit[] rational-basis review."  *Akers v. McGinnis*, 352 F.3d 1030, 1040 (6th Cir. 2003) (internal quotations omitted); *Ledesma v. Block*, 825 F.2d 1046, 1050 (6th Cir. 1987) ("The Supreme Court has recognized that heightened scrutiny is used in reviewing enactments that *directly and substantially* interfere with family living arrangements and thereby burden a fundamental right.") (emphasis added) (internal quotations omitted).

The Supreme Court's decision in *Lyng v. Castillo*, 477 U.S. 635 (1986) illustrates these principles.  In *Lyng*, the Court held that the federal food stamp program's definition of "household" did not require heightened scrutiny.  477 U.S. at 638-39.  The definition—which imposed exceptions for "parents and children, or siblings, who live together"—had the practical effect of financially disadvantaging nontraditional families.  *See id.* at 636-37.  Nonetheless, the Court still concluded that the statutory classification did not "'directly and substantially' interfere with family living arrangements and thereby burden a fundamental right."  *Id.* at 638.  The Court reasoned that the definition did "not order or prevent any group of persons from dining together." *Id.*; *see also Lyng v. International Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW*, 485 U.S. 360, 365-66 (1988) (holding that "isolated instances" of negative consequences are insufficient to trigger heightened scrutiny based on fundamental rights).

### 1. Plaintiffs do not establish a fundamental right to a birth certificate with two names.

Plaintiffs have not, and cannot, demonstrate that Ohio's marriage laws substantially interfere with any fundamental parenting right.  Importantly, and contrary to the implication of Plaintiffs' due process argument, Ohio provides birth certificates for *all* children born in Ohio. (*See, e.g.*, Doc. 4-6 at 5 (providing that the Ohio Department of Health is ready to provide a birth certificate placing one adopted parent's name on the certificate).)  Although Plaintiffs complain

20

that Ohio will not grant them a birth certificate that includes both same-sex partners, they fail to substantiate their argument that a birth certificate listing a single name rather than two deprives them of any concrete benefit, much less results in a disadvantage sufficiently severe to rise to a violation of due process.

Plaintiffs do not, for example, allege that a birth certificate must contain *two names* to achieve the benefits they desire. *See, e.g.*, Ohio Rev. Code § 3313.672(A)(1) (simply requiring a pupil to present "certification of birth" at the time of entry into school). Even accepting Plaintiffs' argument that the absence of a birth certificate with two names creates certain administrative or evidentiary inconveniences, this is not enough to establish a direct and substantial violation of any right. *See League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007) (holding that the "inconvenience" of requiring a person to carry "other personal identification papers" did not constitute infringement on a fundamental right).

Finally, to the extent Plaintiffs are concerned with any hypothetical emergency, legal consequence, or practical inconvenience that could flow from not having a two-parent birth certificate, Ohio law permits same-sex couples to petition for a shared custody agreement. *See In re Bonfield*, 97 Ohio St.3d 387, 396 (Ohio 2002) (holding that pursuant to Ohio Rev. Code § 2151.23(A)(2) a same-sex couple could petition a juvenile court for a shared custody agreement).

### 2. Ohio's marriage laws do not directly and substantially interfere with the right to travel.

Similarly, Ohio's marriage and birth certificate laws do not substantially and directly interfere with Plaintiffs' right to travel. The only specific argument Plaintiffs make in this regard is that a birth certificate is necessary to obtain a passport. (*See* Pls.' Mem. Supp. 16-17.) But the

21

relevant federal regulation governing applications for passports reflects that either a single or two-parent birth certificate is sufficient. *See* 22 C.F.R. § 51.42(a) (providing that a birth certificate must show "the full name of the *parent(s)*") (emphasis added). Notably, even in the absence of *any* birth certificate, federal regulations also allow secondary evidence "sufficient to establish to the satisfaction of the Department that he or she was born in the United States." 22 C.F.R. § 51.42(b). "Secondary evidence includes but is not limited to hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth." *Id*.

Again, Ohio is not denying children birth certificates and remains ready to reissue a birth certificate to Adopted Child Doe listing either Mr. Vitale of Mr. Talmas as the parent. Under these circumstances, the idea that Plaintiffs are unable to travel is both factually and legally inaccurate. There is no basis to conclude that Ohio laws are significantly interfering with the fundamental right to travel. "A state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (internal citations omitted).

As the Sixth Circuit observed in *Bredesen*, mere "inconvenience can hardly be said to deter or penalize travel." *Id*. at 535. There, the Court upheld Tennessee's denial of state-issued photograph identification to temporary resident aliens. Although the Court acknowledged that the rule would "arguably result in inconvenience, requiring the bearer of a certificate for driving to carry other personal identification papers," the court found this inconvenience insufficient to constitute a due process violation: "To the extent this inconvenience burdens exercise of the

right to travel at all, the burden is incidental and negligible, insufficient to implicate denial of the right to travel." *Id.* (citing *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2nd Cir. 2007) (collecting cases recognizing that even citizens do not have a constitutional right to the most convenient form of travel)). "Something more than a negligible or minimal impact on the right to travel is required before strict scrutiny is applied." *Id.*

In sum, Plaintiffs have not demonstrated that Ohio's marriage laws infringe any fundamental right in violation of due process.

## IV. Ohio's marriage laws do not violate equal protection.

Ohio's marriage laws also comport fully with equal protection. Plaintiffs contend that Ohio's refusal to recognize their out-of-state same-sex marriages on Ohio birth certificates violates their equal protection rights by (1) discriminating against them on the basis of their sexual orientation; and (2) discriminating against children on the basis of the "disapproval of the status or actions of their parents." (Pls.' Mem. Supp. 20.) Because Ohio's marriage laws survive rational basis, Plaintiffs' arguments cannot withstand scrutiny.

### A. Rational basis review applies to Plaintiffs' equal protection claims.

Plaintiffs' equal protection claims must be scrutinized under the deferential rational basis standard. "[W]here no suspect class or fundamental right is implicated, [the court] appl[ies] the rational-basis test and sustain[s] the government action in question unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Sadie v. City of Cleveland*, 718 F.3d 596, 601-02 (6th Cir. 2013) (internal quotation marks omitted). As already discussed, this case does not implicate a fundamental right. Nor does it involve a suspect class.

### 1. Under binding Sixth Circuit precedent, sexual orientation is not a suspect classification.

Binding Sixth Circuit precedent dictates that classifications based on sexual orientation are subject to rational basis scrutiny. *See, e.g., Davis v. Prison Health Serv.*, 679 F.3d 433, 438 (6th Cir. 2012) (concluding that because "this court has not recognized sexual orientation as a suspect classification, [the plaintiff's claim that he was discriminated against on the basis of his sexual orientation] is governed by rational basis review"); *Equality Foundation of Greater Cincinnati v. City of Cincinnati*, 128 F.3d 289, 292-94 (6th Cir. 1997) (rejecting the plaintiffs' argument and district court's holding that a city ordinance said to impact gay, lesbian, and bisexual citizens on the basis of their sexual orientation warranted heightened scrutiny and holding instead that rational basis review applies); *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006) (applying rational basis review to challenged conduct because "[i]nasmuch as homosexuality is not a suspect class in this circuit, we cannot hold that persons who associate with homosexuals constitute a suspect class"); *Lee v. Pauldine*, No. 1:12–cv–077, 2013 WL 65111, at *6 (S.D. Ohio Jan. 4, 2013) (Report and Recommendation adopted in full on February 21, 2013) (acknowledging that under the prevailing law of this Circuit, "[a]n equal protection claim brought on this basis is governed by rational basis review").

Only the United States Supreme Court or the Sixth Circuit sitting *en banc* possesses the authority to overrule this Circuit precedent. *See, e.g., Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.") (internal quotation omitted).  Neither the Sixth Circuit nor the Supreme Court has done so.  Although this Court concluded in *Obergefell* that the Supreme Court's decision in *Lawrence* altered the precedential effect of the Sixth

24

Circuit's case law adopting rational basis review, Defendant respectfully notes that the Sixth Circuit has repeatedly affirmed, post-*Lawrence,* that rational basis applies. For example, the Sixth Circuit decided *Scarborough* in 2006 and *Davis* in 2012.

Nor did the Supreme Court's recent decision in *Windsor* overturn Sixth Circuit precedent. Instead, *Windsor* supports the continued application of rational basis review to sexual orientation. Because the Second Circuit had applied intermediate scrutiny to the classification based on sexual orientation, *see Windsor v. United States*, 699 F.3d 169, 181-85 (2nd Cir. 2012), the issue of the appropriate level of scrutiny was directly before the Supreme Court. Despite the opportunity, the Court declined to reclassify sexual orientation as a suspect class and thus did not affirm the lower court's determination that intermediate scrutiny applied. Rather, the Court rested its decision on the conclusion that there was "no legitimate purpose" for federal intrusion on a matter so uniquely reserved to the states. *Windsor*, 133 S. Ct. at 2696. That is a rational basis standard. *Windsor* thus does not disturb the binding precedent requiring rational basis review.

Faced with this binding precedent, courts in this Circuit have correctly believed themselves bound to apply rational basis review to classifications based on sexual orientation. For example, *Bassett v. Snyder*, 951 F. Supp. 2d 939 (E.D. Mich. 2013), which this Court cited for the proposition that heightened scrutiny should apply, expressly reaffirmed that *"[a]t present . . . [heightened scrutiny] is not the law of the [Sixth Circuit], and it cannot govern the decision here." Id.* at 961 (emphasis added). Despite expressing reservations about the applicability of the rational basis standard, *Bassett* held that "*Sixth Circuit precedents require* that the standard against which [the challenged law prohibiting public employers from providing benefits to

same-sex partners of their employees] must be measured in the plaintiffs' equal protection challenge is *rational basis review*." *Id*. (emphases added).

More recently, the Western District of Kentucky similarly concluded that Sixth Circuit precedent continues to require the application of rational basis review. In *Bourke*, the court observed that "[t]he Sixth Circuit has said that sexual orientation is not a suspect classification and thus is not subject to heightened scrutiny." 2014 WL 556729, at *4 (citing *Davis*, 679 F.3d at 438; and *Scarbrough*, 470 F.3d at 261). In the court's view, *Davis* "limit[ed] the Court's independent assessment of the question." *Id.* Significantly, the court found *Davis*'s precedential effect fully intact after *Windsor*: "In *Windsor*, no clear majority of Justices stated that sexual orientation was a suspect category." *Id.* at *5. The court thus applied rational basis scrutiny to the plaintiffs' claims that Kentucky's refusal to recognize their out-of-state same-sex marriages violated equal protection.

The same result is required here. Given the existence of binding precedent, sexual orientation is not a suspect class in the Sixth Circuit.[4]

---

[4]  In light of the binding precedent dictating the applicable level of review, a point-by-point review of the factors courts have considered in support of applying heightened scrutiny is unwarranted and, indeed, Plaintiffs here do not even advance those arguments. In any event, as Defendant explained in his brief in opposition to Plaintiffs' motion for permanent injunction in *Obergefell*, arguments in support of heightened scrutiny—including arguments regarding the suspect class factors, the contention that Ohio's marriage laws are gender-based classifications, and the assertion that Ohio's marriage laws lock same-sex couples out of the political process— lack merit. (*See Obergefell* Doc. No. 56 at 26-38.) Defendant reiterates and incorporates his arguments here.

2.      **Plaintiffs' unsupported allegation that Ohio's marriage laws discriminate against children does not trigger heightened scrutiny.**

Plaintiffs' unsupported allegation that Defendant's marriage laws "discriminate[] against children of same-sex spouses based on disapproval of the status or actions of their parents[,]" (Pls.' Mem. Supp. 20), similarly fails.

Plaintiffs do not cite a single case that has designated "children of same-sex spouses" a suspect or quasi-suspect class; nor do they supply the Court with any basis for taking this unprecedented step. Plaintiffs do not even attempt to explain how Ohio's marriage laws specifically discriminate against these children. To the contrary, Plaintiffs "only generically claim" that Ohio's refusal to issue a birth certificate listing the names of two same-sex partners amounts to discrimination. *Taulbee v. Carver*, No. 1:10–cv–422, 2011 WL 6009675, at *6 (S.D. Ohio Sept. 8, 2011) (Report and Recommendation adopted in full). "Plaintiffs' lack of specificity is fatal to their equal protection claims." *Id.* (finding no equal protection violation where "[P]laintiffs have not shown with specificity how defendants' actions or inactions specifically stemmed from plaintiffs' status as adoptive parents").

In sum, Plaintiffs have not demonstrated that the laws challenged in this case discriminate on the basis of a suspect class or implicate a fundamental right. Rational basis is thus the appropriate level of scrutiny to apply to their equal protection challenge in this case.

B.      **Applying rational basis review, the Court must exercise judicial restraint in considering Ohio's marriage laws and may not guess at some collective motivation of Ohio voters.**

1.      **The Court cannot speculate as to the differing motivations of Ohio voters or legislators in supporting Ohio's same-sex marriage laws.**

Rational basis review is at its pinnacle where, as here, the law in question is a direct result of an electoral vote. A "reviewing court in this circuit may not even inquire into the

electorate's possible actual motivations for adopting a measure via initiative or referendum." *Equality Foundation*, 128 F.3d at 293 n.4; s*ee also Arthur v. City of Toledo*, 782 F.2d 565, 573-74 (6th Cir. 1986) ("Several important policy considerations limit a court's examination of the factors motivating the electorate in a referendum election," including:  the need to protect the "secret ballot," the "value of referendum elections," and the impermissibility of inferring "comments of a few citizens, even those with power" to the "total electorate") (citations omitted); *Washington v. Seattle School District No. 1*, 458 U.S. 457, 465 n. 9 (1982) (quoting district court's observation that "the secret ballot raises an impenetrable barrier" to examining "subjective intent" behind an initiative); *James v. Valtierra*, 402 U.S. 137, 141 (1971) ("Provisions for referendums demonstrate devotion to democracy, not to bias, discrimination, or prejudice.").

Moreover, "[a]s the product of direct legislation by the people, a popularly enacted initiative or referendum occupies a special posture in this nation's constitutional tradition and jurisprudence.  An expression of the popular will expressed by majority plebiscite, especially at the lowest level of government (which is the level of government closest to the people), must not be cavalierly disregarded." *Equality Foundation*, 128 F.3d at 297-98.  Thus the Court must instead "consider all hypothetical justifications which potentially support the enactment." *Id.* at 293 n. 4.

Similarly, the Court cannot inquire into the motivations of lawmakers.  As the Supreme Court emphasized in *F.C.C. v. Beach Comm'n, Inc.*, 508 U.S. 307 (1993), "because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Id.* at 315; s*ee also Am. Exp. Travel Related Serv. Co. v. Kentucky*,

641 F.3d 685, 690 (6th Cir. 2011); *Bailey v. Callaghan*, 715 F.3d 956, 960 (6th Cir. 2013) ("[A]ny *conceivable* legitimate governmental interest will do; and even then it is constitutionally irrelevant whether the conceivable interest actually underlay the enactment of the challenged provision.") (emphasis in original, internal quotations omitted).

Because binding precedent precludes the Court from inquiring into motivations, Plaintiffs' submissions regarding the asserted potential motivations of Ohio voters and particular lawmakers should not be considered. (*See e.g.*, Becker Decl., *Obergefell* Doc. No. 41-1.) The Court cannot attempt to determine the motivations of each individual lawmaker and all three million Ohio voters who chose to preserve Ohio's definition of marriage. Rather than permitting this impossible task, rational basis review requires this Court to consider all potential justifications.

## 2. Rational basis review accords Ohio's marriage laws significant deference.

It is difficult to overstate the deference the Court must afford Ohio's marriage laws, and particularly Ohio's constitutional amendment, under rational basis review. Rational basis review is "a paradigm of *judicial* restraint." *Beach*, 508 U.S. at 314 (internal quotations omitted). The Court must apply "a strong presumption of validity" to the law. *Bailey*, 715 F.3d at 960 (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). "Indeed, 'rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 505-06 (6th Cir. 2007) (quoting *Heller*, 509 U.S. at 319). The standard reflects the belief that "['] judicial intervention is generally unwarranted no matter how unwisely [a court] may think a political branch has acted.'" *Beach*, 508 U.S. at 314 (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)). Consequently, "'[w]hen social or economic legislation is at issue, the Equal Protection Clause allows the States wide

29

latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.'"  *Spurlock v. Fox*, 716 F.3d 383, 402 (6th Cir. 2013) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

> **3.** **Under rational basis review, Plaintiffs bear the burden of negating every conceivable basis that might support Ohio's marriage laws.**

Under rational basis review, a law "will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *Spurlock*, 716 F.3d at 402 (internal quotation omitted).  "[A] classification under rational basis review must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Seger v. Kentucky High School Athletic Ass'n*, 453 F. App'x 630, 635 (6th Cir. 2011) (quoting *Beach*, 508 U.S. at 313).  Thus, "the burden is on the one attacking the legislative arrangement to *negative every conceivable basis* which might support it . . . ."  *Heller*, 509 U.S. at 320 (internal quotations omitted) (emphasis added).

As the Supreme Court has stressed, *"[a] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  Beach*, 508 U.S. at 315 (emphasis added).  This rule recognizes and preserves the careful balance of powers between the judicial and legislative branches:  "Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."  *Id.* (internal quotations omitted). These restraints have "added force" where, as here (because the concept of civil marriage requires some definition as to what falls within its purview), "the legislature must necessarily engage in a process of line drawing."  *Id.* (internal quotations omitted).  In short, if Ohio's

marriage laws can "be upheld under any plausible justification offered by the state, or even hypothesized by the court, it survives rational-basis scrutiny." *Am. Exp. Travel*, 641 F.3d at 690.

Defendant has "no obligation to produce evidence to sustain the rationality of [the State's] actions . . . ." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 465 (6th Cir. 2012) (internal quotations omitted). Moreover, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller*, 509 U.S. at 321. In other words, "[a] classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* (internal quotations omitted). Nor are courts licensed to "judge the wisdom, fairness, or logic of legislative choices." *TriHealth, Inc. v. Board of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 791 (6th Cir. 2005) (internal quotations omitted).

These rational basis principles recognize that "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Heller*, 509 U.S. at 321 (internal quotations omitted). Thus, even where "'[t]he assumptions underlying [the government's] rationales [are] erroneous, [] the very fact that they are 'arguable' is sufficient, on rational-basis review, to 'immunize' the [legislative] choice from constitutional challenge.'" *Id.* at 333 (quoting *Beach*, 508 U.S. at 320).

Accordingly, Plaintiffs' materials disputing the validity of potential reasons for Ohio marriage laws offer Plaintiffs no help under the rational basis standard. The proper definition of marriage just is not something that is susceptible of judicial divination based on the particular opinions or legal conclusions of hand-picked social scientists. Instead, the Court must accept any "rational speculation"—and even imperfect "generalizations"—that could have conceivably

motivated Ohio lawmakers and voters in passing Ohio's marriage laws. *See Heller*, 509 U.S. at 320-21.

   C.   **Plaintiffs have failed in their legal burden of negating "every conceivable basis" for Ohio's preservation of traditional marriage, and Ohio's marriage laws therefore satisfy rational basis review.**

Rational basis review is satisfied here because there are several conceivable legitimate reasons why lawmakers and voters passed Ohio's marriage laws, including the decision to preserve uniformly the traditional definition of marriage without regard to contrary determinations by some other jurisdictions. Ohioans' desire to retain the right to define marriage through the democratic process is legitimate. It is rational for Ohioans to want to set this State's marriage policy. This is especially true where, as here, another state's definition directly contradicts the one historically and uniformly applied in Ohio.

Relatedly, avoiding judicial intrusion upon a historically legislative function (defining "marriage") is a legitimate basis for the passage of Ohio's marriage laws. Ohioans could have feared that, absent the strong public policy statement set forth in both the constitutional amendment and the statute, they would be abdicating that function to the courts, including out-of-state courts. (*See* Becker Decl. Ex. E, *Obergefell* Doc. No. 41-6) (statement of Rep. Seitz, p. 5, lns. 1-3, ""I'm not willing to leave it to courts to define what Ohio's public policy might be."); (statement of Rep. Grendell, p. 46, lns. 9-11, "There's no judge in Massachusetts who is accountable to one person who lives in this state, but we all are. And that's why it is important that we retain the policy, power in Ohio to decide on what is marriage."); (statement of Rep. Grendell, p. 47, lns. 18-20, "I'm going to vote that the people of Ohio deserve to have their representatives decide the public policy of this state."). Ohioans' desire to retain this democratic voice is certainly rational. *See Sevcik v. Sandoval,* 911 F. Supp. 2d 996, 1021 (D. Nev. 2012) (pending appeal) ("[T]he protection of Nevada's public policy is a valid reason for the State's

refusal to credit the judgment of another state, lest other states be able to dictate the public policy of Nevada.").

This desire to retain a democratic voice in setting marriage policy directly relates to yet another rational state interest, and that is Ohio's interest in approaching social change with deliberation and due care. Before this last decade, no state permitted same-sex marriage. Now, some states have chosen to expand marriage to include same-sex couples, while most others, including Ohio, have not. It is undisputed that allowing same-sex marriage would fundamentally alter Ohio's definition of marriage. Faced with these circumstances, Ohio lawmakers and voters could rationally choose to examine the impact that changing marriage laws has had or will have in other states and on other social institutions, including religious bodies, before deciding whether any such change should occur in Ohio. As the *Jackson* court found: "[T]he state may rationally decide to observe the effect of allowing same-sex marriage in other states before changing its definition of marriage." 884 F. Supp. 2d at 1118. Ohio's marriage laws are rationally connected to this purpose, as they leave to the democratic process any change that may occur. Specifically too, by reaffirming Ohio's definition of marriage in the 2004 constitutional amendment, voters assured that it is the will of the people of *Ohio*, not that of a court or another state, that controls. "[T]he state could rationally conclude that it is addressing a divisive social issue with caution." *Id.* at 1072.

Justice Brandeis's metaphor of the States as the laboratories of democracy remains powerful—and rational—today. *See New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting). Wanting to see how revision efforts in other States progress, so as to assess the results of such changes and take them into account in setting future policy, is a conceivable rational basis that could have informed votes. *See Jackson*, 884 F. Supp. 2d at 1118

33

(noting the legitimate interest in addressing "a highly-debated social issue cautiously"). On these important issues of "social needs and policy, it is the paramount role of the *legislature* as a coordinate branch of our government to meet the needs and demands of changing times and legislate accordingly." *Id.* at 1118 (emphasis added).

Ohio's desire to protect its right to define marriage from another state or a court is not only rational, it is authorized by federal statute. Under a rational basis review, Section 2 of DOMA itself provides sufficient justification for Ohio's action. In passing Ohio's marriage laws, lawmakers and voters were exercising the authority that the federal government has preserved for the states. Congress, through Section 2 of DOMA, has confirmed each individual state's right to decide for itself whether to recognize the same-sex marriages of the other states. 28 U.S.C. § 1738C. *Windsor* left this provision of DOMA untouched, and Plaintiffs do not challenge it here. Under these circumstances, Ohio's reaffirmation of the traditional definition of marriage and refusal to recognize out-of-state same-sex marriages is a rational, discretionary policy decision based on state authority that federal law protects.

Preserving the traditional definition of marriage thus represents another legitimate reason for Ohio's marriage laws. By limiting marriage to opposite-sex relationships, Ohio voters made the policy decision to honor the traditional form of marriage for the purposes of Ohio law. In *Lawrence*, Justice O'Connor recognized "preserving the traditional institution of marriage" as itself a "legitimate state interest." 539 U.S. at 585 (O'Connor, J., concurring and adding that "other reasons exist to promote the institution of marriage beyond mere moral disapproval of an excluded group").

Justice O'Connor's position makes sense. The on-going social debate is between two competing views of marriage. *See Windsor*, 133 S. Ct. at 2718 (Alito, J., dissenting). One side

34

of this debate views marriage "as an intrinsically opposite-sex institution" based on human history and experience. *Id*. As Justice Alito observed in *Windsor*, this traditional view takes the position that "throughout human history and across many cultures, marriage has been viewed as an exclusively opposite-sex institution and as one inextricably linked to procreation and biological kinship." *Id*. While others may disagree with this view, to cut off any further debate on the issue would go against the rational basis approach.

Moreover, the idea of preserving traditional marriage should not be cast off as implicit animus. Obviously, government cannot use history or tradition to cloak invidious discrimination. *See Lawrence*, 539 U.S. at 577-78 ("[N]either history nor tradition could save a law prohibiting miscegenation from constitutional attack.") (internal quotation omitted). At the same time, however, history and tradition are still important parts of the rational basis analysis, and the Supreme Court has acknowledged the importance of history in considering the scope of marriage: *Windsor* specifically recognized that in defining marriage, states were free to consider "the historical roots of the institution . . . ." 133 S. Ct. at 2692-93.

Central to these "historical roots" is a traditional definition of marriage as being between a man and a woman. Under such conditions, it would be inappropriate to reject the voters' adoption of traditional view of marriage as wholly unsupported. As the highest court of New York observed:

> [T]he traditional definition of marriage is not merely a by-product of historical injustice. Its history is of a different kind. The idea that same-sex marriage is even possible is a relatively new one. Until a few decades ago, it was an accepted truth for almost everyone who ever lived, in any society in which marriage existed, that there could be marriages only between participants of different sex. A court should not lightly conclude that everyone who held this belief was irrational, ignorant or bigoted.

*Hernandez v. Robles*, 7 N.Y.3d 338, 361 (N.Y. 2006). "The protection of the traditional institution of marriage, which is a conceivable basis for the distinction drawn in this case, is a legitimate state interest." *Sandoval*, 911 F. Supp. 2d at 1014.

Tellingly, many courts, judges, and justices have accepted the rationales the State outlines above, along with other reasons such courts have found to be legitimate justifications for state laws precluding same-sex marriage. *See, e.g., Lawrence*, 539 U.S. at 585 (O'Connor, J., concurring); *Bruning*, 455 F.3d at 867-88; *Jackson*, 884 F. Supp. 2d at 1114-19; *Sandoval*, 911 F. Supp. 2d at 1015; *Wilson*, 354 F. Supp. 2d at 1308; *In re Kandu*, 315 B.R. 123, 146 (Bankr. W.D. Wash. 2004); *Conaway*, 401 Md. 219, 317-19 (Md. 2007); *Hernandez*, 7 N.Y.3d at 359-60; *Andersen v. King Cnty.,* 158 Wash. 2d 1, 37-39 (Wash. 2006); *In re Marriage of J.B. & H.B.*, 326 S.W.3d 654, 677-78 (Tex. App. 2010); *Morrison v. Sadler*, 821 N.E.2d 15, 30-31, 35 (Ind. App. 2005); *Standhardt v. Superior Court ex rel. Cnty. of Maricopa*, 206 Ariz. 276, 286-89 (Ariz. App. 2003); *cf. also Bruning,* 455 F.3d at 870 ("[I]n the nearly one hundred and fifty years since the Fourteenth Amendment was adopted, . . . no Justice of the Supreme Court has suggested that a state statute or constitutional provision codifying the traditional definition of marriage violates the Equal Protection Clause or any other provision of the United States Constitution.").

**VI.    Ohio's marriage laws, and Ohio's birth certificate practices, do not violate the Full Faith and Credit Clause.**

In the alternative to their due process and equal protection challenges, the New York Plaintiffs (as well as S.T.A.R. Adoption) attempt to bring § 1983 claims based on an alleged violation of the Full Faith and Credit Clause.  (Compl. ¶ 78.)  These Plaintiffs specifically maintain that Ohio's failure to treat Mr. Vitale and Mr. Talmas as a married couple under Ohio law and reissue a two-parent birth certificate for Adopted Child Doe—in light of a New York court's Order of Adoption (Doc. No. 17-2)—is a constitutional violation.  Plaintiffs are incorrect for multiple reasons.

First, under Section 2 of DOMA, passed pursuant to Congress' Full Faith and Credit Clause authority, Ohio retains the ability to define and recognize marriage as it deems appropriate.  The Full Faith and Credit Clause expressly grants Congress the authority to enact general laws to determine the effect of public acts, records, and judicial proceedings.  Const. Art. IV § 1; *see also Los Altos El Granada Investors v. City of Capitola*, 583 F.3d 674, 686 (9th Cir. 2009) ("The Constitution also gives Congress the power to determine the contours of [full faith and credit] deference.").  Exercising this authority, Congress passed Section 2 of DOMA, which allows each State to decide what if any effect to give public acts *and* judicial proceedings respecting "a relationship between persons of the same sex that is treated as a marriage under the laws" of other States.  28 U.S.C. § 1738C.  Section 2 of DOMA, therefore, permits Ohio to determine—consistent with the Full Faith and Credit Clause—whether to credit public acts and/or judicial proceedings respecting same-sex marriages.  Section 2 of DOMA remains controlling federal law, and is unchallenged in this case.

Importantly, Section 2 of DOMA is consistent with the traditional application of full faith and credit within the context of marriage.  *See, e.g.*, *Bishop v. U.S. ex rel. Holder*, — F. Supp. 2d

—, 2014 WL 116013, at *34 n.12 (N.D. Okla. Jan. 14, 2014) (collecting scholarly authority recognizing that Section 2 merely ratified the states' ability to decide what marriages to recognize).  The Full Faith and Credit Clause "does not [] enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it." *Nevada v. Hall*, 440 U.S. 410, 423-24 (1979) (internal quotations omitted).  And the "Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy." *Id.* at 422.  Similarly, the Supreme Court has confirmed that each state retains the authority to define marriage for itself, recognizing "[m]arriage laws vary in some respects from State to State." *Windsor*, 133 S. Ct. at 2691.  Consequently, the Full Faith and Credit Clause does not "create a license for a single State to create national policy" regarding marriage laws and does not require states to recognize the same-sex marriages of others. *Wilson*, 354 F. Supp. 2d at 1303-04.

In this case, although Plaintiffs frame their full faith and credit challenge in terms of the State's response to the New York Order of Adoption, their underlying dispute is still with Ohio's failure to recognize Mr. Vitale and Mr. Talmas' New York marriage.  In their own words, Plaintiffs contest not being treated the same as "an opposite-sex *married* couple . . . ."  (Pls.' Mem. Supp. 2 (emphasis added).)  Instead, Ohio is treating them as two unmarried individuals for the purposes of reissuing a birth certificate for Child Doe.  *See* Ohio Rev. Code § 3107.03 (outlining who may adopt under Ohio law).  Ohio, however, is not required to recognize Plaintiffs' same-sex marriage under the Full Faith and Credit Clause.  Pursuant to the authority codified in Section 2 of DOMA, Ohio may decide for itself whether to treat Mr. Vitale and Mr. Talmas as married individuals.

Second, on a foundational level, the Full Faith and Credit Clause does not give rise to a § 1983 cause of action. *Adar v. Smith*, 639 F.3d 146, 152-57 (5th Cir. 2011) (en banc). In *Adar*, the Fifth Circuit held that full faith and credit obligations did not "give[] rise to a right vindicable in a § 1983 action." 639 F.3d at 153. Performing a detailed analysis of the issue, an *en banc* panel of the Fifth Circuit reasoned that the Full Faith and Credit Clause created a "'rule of decision' on state courts," not an individual right enforceable against "non-judicial state actors." *Id.* at 153-54. The *Adar* Court concluded that—instead of a § 1983 action—the proper way to enforce an out-of-state judgment was to submit the judgment to state court for enforcement, and, if necessary, seek Supreme Court review. *Id.* at 158. Notably, the case Plaintiffs most heavily rely on—*Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007)—fails to even discuss whether § 1983 provides the necessary mechanism for a full faith and credit claim. *See Adar*, 639 F.3d at 156-57 (disagreeing with and distinguishing the Tenth Circuit's holding in *Finstuen*).

Supreme Court authority supports the Fifth Circuit's decision in *Adar*. In *Thompson v. Thompson* 484 U.S. 174 (1988), the Supreme Court held that "the Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action." 484 U.S. at 182. The Court, in reaching its holding, provided no indication that § 1983 would furnish any such cause of action against state actors. Rather, the Court determined that the full faith and credit statute in question (the Parental Kidnaping Prevention Act of 1980) was "most naturally construed to furnish a rule of decision for courts to use in adjudicating custody disputes and not to create an entirely new cause of action." *Id.* at 183. The Court further reasoned that the Full Faith and Credit Clause "'*only* prescribes a rule by which courts, Federal and state, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records, and judicial proceedings of a State

39

other than that in which the court is sitting.'" *Id.* at 182-83 (emphasis added) (quoting *Minnesota v. Northern Securities Co.*, 194 U.S. 48, 72 (1904)).

In addition to the reasoning of *Thompson*, there is also significant authority holding that the Full Faith and Credit Clause does not raise an independent federal question for trial court review. *See, e.g.*, *Northern Securities*, 194 U.S. at 72 ("[T]o invoke the rule which [the Full Faith and Credit Clause] prescribes does not make a case arising under the Constitution or laws of the United States."); *Adar*, 639 F.3d at 157 ("Absent an independent source of jurisdiction over such claims, federal district courts may not hear [full faith and credit] cases."); *Stewart v. Lastaiti*, 409 F. App'x 235, 236 (11th Cir. Oct. 28, 2010) (holding that trial court properly dismissed a § 1983 full faith and credit claim for lack of subject matter jurisdiction); 13D Charles Alan Wright, et al., Federal Practice and Procedure § 3563, at 214 (3d ed. 2008) ("[R]eliance on the Full Faith and Credit Clause of Article IV, Section 1, of the Constitution will not invoke federal question jurisdiction. . . . [T]here is no jurisdiction because the relation of the constitutional provision and the claim is not sufficiently direct that the case 'arises under' the clause.").

Finally, even assuming a § 1983 cause of action exists, Plaintiffs' claim lacks merit because the State of Ohio has not failed to give effect to the New York Adoption Decree. Under the Full Faith and Credit Clause, a state court must recognize the judgments of a sister-state court. *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232-33 (1998). "Full faith and credit, however, does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments." *Id.* at 235. "Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the evenhanded control of forum law." *Id.* Accordingly, "[t]he local law of the forum

40

determines the methods by which a judgment of another state is enforced." *Id.* (internal quotations omitted).

Here, Ohio is not refusing to recognize the validity of the New York Order of Adoption. As Plaintiffs' own evidentiary submission demonstrates, Ohio is willing (consistent with the relevant Ohio enforcement laws) to reissue a birth certificate for Adopted Child Doe under Ohio Rev. Code § 3705.12 naming either Mr. Vitale or Mr. Talmas as the parent. (*See* Doc. No. 4-6 at 5.) This is exactly the same treatment an unmarried opposite-sex couple would receive under Ohio law. (*See id.*); Ohio Rev. Code § 3107.03 (permitting adoption only by two married individuals or a single individual, but not two unmarried individuals). The outcome is not the result of a "roving public policy exception," as Plaintiffs contend, but Ohio's application of its own laws. Moreover, Ohio's underlying decision to limit marriage to its traditional definition, the result of a popular vote of the Ohio people, is a decision that Section 2 of DOMA expressly permits under the Full Faith and Credit Clause. Ultimately, what Plaintiffs seek is not enforcement of their New York Order of Adoption under Ohio law, but recognition (based on substitution of New York's marriage laws) of Mr. Vitale and Mr. Talmas' same-sex marriage. *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988) ("The Full Faith and Credit Clause does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.") (internal quotations omitted). The Full Faith and Credit Clause does not require such forced recognition.

## VII. Plaintiff Adoption S.T.A.R. lacks standing to pursue its claims in this case.

Finally, even if this Court were to find a constitutional violation (and it should not), this Court should deny Plaintiff Adoption S.T.A.R.'s claims for relief. Rather than relying on its own rights, Adoption S.T.A.R. purports to bring this action "on behalf of its clients who seek to complete adoptions" involving Ohio-born children and seeks relief for any "same-sex couples

married in [other] jurisdiction . . . who become clients of Plaintiff Adoption S.T.A.R. . . . ." (Compl. ¶¶ 9, VII.B.)  Because Adoption S.T.A.R. lacks both first and third-party standing to assert its claims, the Court should deny these claims in their entirety.

To establish Article III standing, a plaintiff must show that an injury is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1147 (2013) (internal quotations omitted).  As the party invoking this Court's jurisdiction, Plaintiffs bear the burden of proving each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at successive stages of the litigation."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal quotations omitted).  A party, however, may pursue the rights of others when (in addition to the injury requirement) the party can establish that (1) "the party asserting the right has a 'close' relationship with the person who possesses the right" and (2) "there is a 'hindrance' to the possessor's ability to protect his own interests."  *Boland v. Holder*, 682 F.3d 531, 537 (6th Cir. 2012) (internal quotations omitted).  Importantly, the concept of third-party standing is typically disfavored.  *Kowalski*, 543 U.S. at 130; *see also Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976) (outlining reasons why "[f]ederal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation").

Here, Adoption S.T.A.R. fails to satisfy its burden of establishing standing.  First, Adoption S.T.A.R. fails to demonstrate a sufficient injury.  Although somewhat unclear,

Adoption S.T.A.R.'s theory of injury appears to be that it has incurred costs based on Ohio's failure to issue two-parent adoption certificates to same-sex couples.  (*See* Compl. ¶¶ 48-49.) Adoption S.T.A.R. fails to explain, however, how the Ohio laws in question—which impose duties on the Ohio Department of Health—require Adoption S.T.A.R. to take any particular action.  *See, e.g.*, Ohio Rev. Code § 3705.12(A) (imposing duties on the Ohio Department of Health in response to Court adoption decrees).  Moreover, Adoption S.T.A.R.'s voluntary choice to become involved in this and other litigation—and to advocate against Ohio laws—is not sufficient to satisfy the injury requirement.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) ("An organization cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all.  It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem.") (internal quotations omitted).

Nevertheless, even assuming that Adoption S.T.A.R.'s allegations sufficed at the pleading stage, they fail to support the entity's claim to standing at this final merit stage.  *See, e.g.*, *Ross v. City of Gatlinburg, Tennessee*, 113 F. App'x 113, 115 (6th Cir. 2004) (holding that the plaintiff failed to submit sufficient evidence to survive the defendant's motion for summary judgment); *cf. also Interstate Natural Gas Ass'n of Am. v. F.E.R.C.*, 285 F.3d 18, 46 (D.C. Cir. 2002) ("While compliance costs often constitute an injury-in-fact, Enron's argument here rests solely on a conclusory, vague and unsupported assertion of cost increases.").

Adoption S.T.A.R. has not offered *any* evidence to substantiate its allegations that it has made changes to its policies as a result of Ohio's laws or that they expended resources towards this issue.  This failure of proof forecloses Adoption S.T.A.R.'s claim to standing.  *Ross*, 113 F. App'x at 115 (affirming summary judgment based on the plaintiffs "fail[ure] to provide ANY

evidence of 'concrete and particularized, actual or imminent' injuries resulting from the City's actions or inactions").

Additionally, Adoption S.T.A.R. fails to establish the requirements of third-party standing.[5] Even assuming that Adoption S.T.A.R.'s hypothetical relationship with future clients were sufficient to demonstrate a close relationship (which it is not), Adoption S.T.A.R. fails to satisfy hindrance. Under the hindrance requirement, the plaintiff must demonstrate that the third party faces some obstacle "in litigating their rights themselves." *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 209 (6th Cir. 2011). The United States Supreme Court has generally looked for "daunting" barriers or "insurmountable procedural obstacles" to support a finding of hindrance. *See Miller v. Albright*, 523 U.S. 420, 449-50 (1998) (O'Connor, J., concurring, Kennedy, J., joining) ("A hindrance signals that the rightholder did not simply decline to bring the claim on his own behalf, but could not in fact do so.").

The Sixth Circuit addressed the hindrance element in *Boland*. 682 F.3d at 536-37. The Court specifically held that "hypothetical future defendants" faced no hindrance in their ability to raise Sixth Amendment rights. *Id.* The Court reasoned that such defendants had raised challenges in prior cases and, therefore, faced no obstacle in doing so again. *Id.* at 537; *cf. also Kowalski*, 543 U.S. at 527-28 (holding that a litigant's *pro se* status was not the type of hindrance required for third-party standing).

Much like the potential plaintiff in *Boland*, Adoption S.T.A.R. fails to establish hindrance. Adoption S.T.A.R. does not allege, much less prove, that same-sex couples—married in other jurisdictions—are hindered from litigating their own rights. Indeed, the participation of

---

[5] There is no basis for finding that Adoption S.T.A.R. has first-party standing. Once again, Adoption S.T.A.R. is pursuing the alleged constitutional rights of its future clients. The adoption agency does not assert that its own constitutional rights are at stake in this matter.

four different same-sex couples in this case strongly suggests, if not shows, that potentially injured third parties are more than capable of pursuing their own rights.  Moreover, because birth certificates can be amended and reissued, there are no significant time restrictions on a potential third parties' ability to bring their own actions.  Under these circumstances, there is no basis for departing from the ordinary rule that "one may not claim standing . . . to vindicate the constitutional rights of some third party."  *Barrows v. Jackson*, 346 U.S. 249, 255 (1953).

Because Adoption S.T.A.R. has not demonstrated standing on its own behalf or on the behalf of third party clients, the Court should deny Adoption S.T.A.R.'s claims.

## CONCLUSION

For the above reasons this Court should deny Plaintiffs' request for declaratory and injunctive relief and dismiss this action.

Respectfully submitted,

MICHAEL DeWINE (0009181)
Ohio Attorney General

*/s/ Ryan L. Richardson*
RYAN L. RICHARDSON (00090382)*
    *Lead and Trial Counsel*
BRIDGET E. COONTZ (0072919)
ZACHERY P. KELLER (0086930)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
ryan.richardson@ohioattorneygeneral.gov
bridget.coontz@ohioattorneygeneral.gov
zachery.keller@ohioattorneygeneral.gov

*Counsel for Theodore E. Wymyslo, M.D.,*
*Director of the Ohio Department of Health*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing *Memorandum in Opposition to Plaintiffs' Motion for Declaratory and Permanent Injunction* was electronically filed with the U.S. District Court, Southern District of Ohio, on March 19, 2014, and served upon all parties of record via the court's electronic filing system.


*/s/ Ryan L. Richardson*
RYAN L. RICHARDSON (0090382)
Assistant Attorney General